IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DAWN CORDERO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | No. 3:18-CV-00328 |
| | § | |
| TARGET CORPORATION, | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S MOTION TO STRIKE COUNTER AFFIDAVIT AND EXCLUDE OPINIONS OF RHONDA GUITREAU

TO THE HONORABLE JUDGE OF SAID COURT:

PLAINTIFF DAWN CORDERO files this Motion to Strike the Counter Affidavit of Rhonda Guitreau, filed by the Defendant in this case, as follows:

## I.   BACKGROUND FACTS

Plaintiff was inside Defendant's premises while walking in the produce area when she slipped on a red food like liquid /substance on the floor. This caused Plaintiff to sustain injuries to her leg, hip, back and other parts of her body.

On February 12, 2019, this Honorable Court entered a Memorandum Order Granting In Part Plaintiff's Motion to Determine Applicability of Tex. Civ. Prac. & Rem. Code § 18.001 *Et Seq*. [Doc. 8]. In such Order, this Court held that:

> **IT IS MOREOVER ORDERED** that if such affidavits are used in this case, the parties **SHALL COMPLY** with § 18.001, *et seq*., of the Texas Civil Practice and Remedies Code in **all respects**, **including** subsection 18.001(f) regarding counter-affidavits, but **excluding** the time limits set forth in subsections 18.001(d)–(e).  The parties' compliance with § 18.001, *et seq*., or lack thereof will be assessed by the statute and case law interpreting and applying the statute.  To the extent, such compliance requires the application of Texas Rules of Evidence, Federal Rules of Evidence shall govern instead.

*See Doc 8*. Following this Memorandum Order, the Court modified the Scheduling Order deadlines to include:

> **6.1** Any objections as to an affidavit or counter-affidavit under § 18.001 of the Texas Civil Practice and Remedies Code or the affiants thereof shall be made by motion, within **thirty (30) days** of receipt of the copy of the affidavit or counter-affidavit, or within **thirty (30) days** of the affiant's deposition, if a deposition is taken, whichever is later.

*See Doc 9.*

In an effort to establish that the medical expenses incurred by Plaintiff were reasonable and necessary, Plaintiff obtained and served the following affidavits of reasonableness and necessity of billing charges under section 18.001 of the Texas Civil Practice and Remedies Code:

a) Affidavit of Billing Cost for Dawn Cordero signed on May 16, 2019 by Fernando Young, custodian of records for The Hospitals of Providence East Campus;

b) Affidavit of Billing Cost for Dawn Cordero signed on March 13, 2019 by John Garcia, custodian of records for Border City Orthopedics;

c) Affidavit of Billing Cost for Dawn Cordero signed on December 19, 2018 by Consuelo Padilla, custodian of records for Diagnostic Outpatient Imaging;

d) Affidavit of Billing Cost for Dawn Cordero signed on November 13, 2018 by John Garcia, custodian of records for Ortho El Paso;

e) Affidavit of Billing Cost for Dawn Cordero signed on June 4, 2019 by Luz Ibarra, custodian of records for Bassett Surgery Center;

f) Affidavit of Billing Cost for Dawn Cordero signed on November 6, 2018 by Jacquelyn Chavez, custodian of records for Medport Billing c/o Rio Grande Physical Therapy;

g) Affidavit of Billing Cost for Dawn Cordero signed on January 29, 2019 by Cameron Sablan, custodian of records for Chamizal Emergency Physicians;

h) Affidavit of Billing Cost for Dawn Cordero signed on November 27, 2018 by Wilfred Trinidad, custodian of records for Providence Imaging Consultants, PA;

On July 5, 2019, Defendant filed its Expert Designations, listing Rhonda Guitreau as a retained testifying expert. *Doc. 33* at 1-2. According to Defendant, "Ms. Guitreau is a certified medical insurance specialist with expertise in medical billing." *Doc. 33*. Defendant indicates that

"[s]he will testify about the amount of reasonable charges for services rendered to Dawn Cordero, and she will testify about the amounts by which The Back and Neck Institute (Dr. Urrea) and Bassett Surgery Center have exceeded a reasonable billing charge for the services provided." *Doc. 33* at 1. Also, on July 5, 2019, in response to the § 18.001 affidavits that Plaintiff served, Defendant, Target Corporation filed a controverting affidavit prepared by Rhonda Guitreau, in which she attempts to contravene the reasonableness of the amounts charged by Bassett Surgery Center and The Back and Neck Institute. *See Doc 34*.

For the reasons set forth below, Plaintiff respectfully requests that the Counter Affidavit of Rhonda Guitreau be struck in its entirety.

## II.     PLAINTIFF'S OBJECTIONS TO DEFENDANT'S COUNTER AFFIDAVIT

1.      Defendant's Counter Affidavit does not give reasonable notice of the basis on which Defendant intends at trial to convert Plaintiff's claims. *See* TEX. CIV. PRAC. & REM. CODE §18.001(f).  Guitreau provides insufficient facts and relies on conclusory statements to support her assertion that Plaintiff's medical costs are unreasonable.

2.      Defendant's Counter Affidavit were not made by a person who is qualified by the knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of the matters contained in Defendant's Counter Affidavit.  *See* TEX. CIV. PRAC. & REM. CODE §18.001(f); TEX. R. EVID. 702. Guitreau is a hospital administrator/respiratory therapy technician who has not practiced medicine since the 1980s, and she possess no additional education or experience to qualify her as an expert under FED. R. EVID. 702 or TEX. CIV. PRAC. & REM. CODE §18.001.

3.      Defendant's Counter Affidavit was not made by a person who is qualified by the knowledge, skill, experience, training, education, or other expertise, to testify in contravention of

the medical services/procedures Plaintiff received from Bassett Surgery Center and The Back and Neck Institute.  *See* TEX. CIV. PRAC. & REM. CODE §18.001(f).

4.     Texas case law weighs heavily in favor of striking the opinions Guitreau attempts to proffer here.

### III.     ARGUMENTS AND AUTHORITIES

Sections 18.001 and 18.002 of the Texas Civil Practice and Remedies Code reflect an intent by the Texas Legislature to "provide a significant savings of time and cost to litigants, particularly in personal injury cases, by providing a means to prove up the reasonableness and necessity of medical expenses."  *Turner v. Peril*, 50 S.W.3d 742, 746 (Tex. App.—Dallas 2001, pet. denied). Section 18.001(b) states:

> Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

TEX. CIV. PRAC. & REM. CODE § 18.001(b); see also *Hong v. Bennett*, 209 S.W.3d 795, 800 (Tex. App.—Fort Worth 2006, no pet.).

If a defendant intends to prevent a plaintiff from relying solely on a served billing affidavit to support a damages award, a defendant must file a controverting affidavit.  There are two main requirements for a counter affidavit: (a) it ***must give reasonable notice** **of the claims the opponent** **intends to controvert and why***; and, (b) ***it must be made by a person qualified to testify*** in contravention of the matters contained in the initial affidavit. *Ten Hagen Excavating, Inc. v. Castro-Lopez,* 503 S.W.3d 463, 492 (Tex. App.—Dallas, 2016, pet. denied), citing TEX. CIV. PRAC. & REM. CODE §18.001(f) [emphasis added]. Courts should consider the following factors when assessing the offered testimony of experts: the extent to which the expert's theories can be

tested; whether the expert's techniques have been subjected to peer review; the potential rate of error for the expert's techniques; whether the expert's techniques have been generally accepted as valid by the relevant community; the extent to which the technique relies on the subjective interpretation of the expert; and the nonjudicial uses of the theory or technique that have been made. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 SW2d 549, 557 (Tex. 1995); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 726 (Tex. 1998). The Court must act as a "gatekeeper" to determine the qualifications of an expert and whether the expert's opinion is admissible according to the six Robinson factors. *Id*.

### A. Defendant's counter affidavit does not give reasonable notice of the basis for which Defendant intends at trial to convert Plaintiff's claims as required by the Texas Civil Practice and Remedies Code.

The counter affidavit of Guitreau does not give reasonable notice of the basis for which Defendant intends at trial to convert Plaintiff's claims and should be stricken. Section 18.001(f) of the TEX. CIV. PRAC. & REM. CODE states that counter affidavits "must give reasonable notice of the basis" on which the medical expenses/services are controverted. In the absence of reasonable notice for the basis of a controverting affidavit, the Court should not admit the proffered counter affidavit. *Turner v. Peril*, 50 S.W.3d 742, 748 (Tex.App.—Dallas 2001). Further, "opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'" *Coastal Trans. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 232-33 (Tex. 2004), quoting TEX. R. EVID. 401. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Id. "*Conclusory statements without factual support are not credible and are not susceptible to being readily controverted." *Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ).

In *Turner v. Peril,* the Dallas Court of Appeals addressed the requirements of a counter affidavit filed under section 18.001 of the Texas Civil Practice & Remedies Code. Turner appealed a judgment based on a verdict in his personal injury suit against Peril. At trial, Turner offered affidavits under section 18.001 to prove medical expenses he had incurred were reasonable and necessary, but the trial court held that the nine affidavits were inadmissible because of counter affidavits filed by Peril. On appeal, the Dallas Court of Appeals reversed and remanded the case holding that the counter affidavits, which were devoid of detailed explanation or medical reasoning, obscured the affiant's basis for controverting the affidavits filed by Turner, or concealed such basis. *Id. See also, Burrow v. Arce*, 997 S.W.2d 229, 235-6 (Tex. 1999) (holding that in a summary judgment proceeding an expert's affidavit must contain factual support for the expert's opinion). As in *Turner,* Defendant's Counter Affidavit does not give a reasonable basis on which Defendant intends to convert Plaintiff's claims.

When you view Defendant's Counter Affidavit and exhibits together, Guitreau is essentially claiming that she pulled information from a commercial database based upon the CPT billing code for each procedure and came up with a charge that she claims is reasonable. She then provides a chart with Plaintiff's medical procedure costs and a corresponding lower arbitrary "usual customary reasonable fee." However, Guitreau provides no explanation for how she came up with the "usual customary reasonable fee" other than she arbitrarily chose to rely on the Context4 Healthcare database. Indeed, Guitreau spends more time illuminating on the Context4 Healthcare database than Plaintiff's medical treatment. In fact, Guitreau never address the specific treatment received by Plaintiff in her affidavit. Instead she states in a conclusory fashion:

> "I have reviewed the statements of charges incurred for services provided to DAWN CORDERO by BASSETT SURGERY CENTER and THE BACK AND NECK INSTITUTE for treatment of alleged injuries. Based upon my knowledge, experience and billing expertise, and after consulting the medical

industry and market resources referenced herein below, ***it is my opinion that not all the charges levied are within the usual, customary, and reasonable variance for the geographical area in which the services were rendered.*** A listing of the reduced service charges is attached hereto and incorporated herein by reference as Exhibit B." *Exh. 1: Counter Affidavit of Guitreau* [emphasis added].

This conclusory statement gives absolutely no standard for reasonableness. Instead, Guitreau attempts to controvert the reasonableness of charges by relying on her own conclusions that such charges are not reasonable. Guitreau wholly fails to detail *how* Plaintiff's medical charges were unreasonable in El Paso County. In a more specific but equally conclusory opinion, Guitreau states:

"I have reported the charges for services rendered to DAWN CORDERO at the 80th percentile level. The 80th percentile indicates that the charges billed by BASSETT SURGERY CENTER and THE BACK AND NECK INSTITUTE exceed 80% ***of all charges submitted by other providers in the same geographic area for the same services.*** The 80th percentile charge represents a level that third-party payers, state agencies, commercial entities and others in the healthcare industry find to be a fair and reasonable charge when negotiating out of network provider reimbursement." *Exh. 1: Counter Affidavit of Guitreau* [emphasis added].

Guitreau does not give details on these "other providers" on which she so heavily relies. She does not give details about her own experience performing or billing for Plaintiff's medical procedures in or near El Paso County, where the charges were incurred. Indeed, while Guitreau alleges to have "reported on over 600 cases involving medical, surgical and pharmacy services," her counter affidavit and attached report are completely devoid of any mention that even one of those cases involves charges incurred in El Paso County. *Exh. 1: Counter Affidavit of Guitreau.* In an attempt to legitimize her unsupported opinions, Guitreau declares that she relied upon "Context4Healthcare's (C4H) Usual, Customary and Reasonable (UCR) database." *Exh. 1: Counter Affidavit of Guitreau.* Without any support for such an assertion, she further declares that "[i]t is the ***standard accepted practice in the medical community*** to rely on this type of database

to determine fair and reasonable fees for services rendered." *Exh. 1: Counter Affidavit of Guitreau* [emphasis added]. Interestingly, all while declaring that this "database" is the "standard" in the medical community, she also admits that it is proprietary. *See id.*

Simply put, Section 18.001 of the Texas Civil Practice and Remedies Code requires that Defendant's counter affidavit give reasonable notice of the basis on which it intends to controvert Plaintiff's charges. Tex. Civ. Prac. Rem. § 18.001. Defendants' Counter Affidavit is wholly conclusory and void of any analysis that would put Plaintiff on reasonable notice of the basis for controverting her incurred charges. Guitreau does not provide any factual support for her conclusions. As referenced above, she does not establish that she is familiar with what the charges are for the services provided to Cordero in El Paso County. She simply concludes that the charges are not reasonable for this county. While Guitreau refers to the Context4 Healthcare database, she makes conclusory statements that wholly rely on those databases. There is also little to no justification or cited authority that these databases are accurate, authoritative, or even reliable other than Guitreau's conclusory and self-serving allegation that such database is the "standard" in the medical community. Importantly, Plaintiff does not have access to this database that Guitreau admits is proprietary, and therefore Plaintiff cannot cross-examine the database, its creators, and certainly cannot call it as a witness at trial. A controverting affidavit under section §18.001 is insufficient unless its allegations are direct and unequivocal and perjury can be assigned to it. *Turner,* 50 S.W.3d at 747. Perjury cannot be assigned to the computer database printouts, and because Guitreau's entire controverting affidavit is solely based on information derived from those printouts from the computer's hearsay conclusions, Defendant's Counter Affidavit authored by Guitreau is flawed and this Court should not permit it to be used in this case.

Additionally, Guitreau does not identify what part or parts of the Context4 Healthcare databases

she relies on to conclude Plaintiff's medical bills are unreasonable.[1] For example, Plaintiff has no way of knowing the extent to which the Context4 Healthcare database addresses the costs related to orthopaedic treatment she received at Basset Surgery Center and The Back and Neck Institute. Guitreau's controverting affidavit is not comprised of her own opinions (other than self-serving assertions), but is simply a reflection of results from a computer database, and Guitreau certainly cites no authority that the Context4 Healthcare database is the exclusive measure of reasonable charges for medical services or that any of the medical providers in El Paso County rely on the information contained in the Context4 Healthcare database as a basis for determining reasonable and necessary charges.

Furthermore, according to *E.I. du Pont de Nemours & Co. v. Robinson,* courts should consider the following factors when assessing the offered testimony of experts: the extent to which the expert's theories can be tested; whether the expert's techniques have been subjected to peer review; the potential rate of error for the expert's techniques; whether the expert's techniques have been generally accepted as valid by the relevant community; the extent to which the technique relies on the subjective interpretation of the expert; and the nonjudicial uses of the theory or technique that have been made. 923 SW2d 549, 557. However, Guitreau fails to establish that the amounts she relies on in her guidelines were derived from scientifically valid analysis of healthcare provider charges by El Paso County providers. There is no evidence that Guitreau's theories can be tested or have been tested. There is no evidence that her "techniques" have been subjected to peer review. Most importantly, there is not one shred of evidence that Guitreau's techniques have been generally accepted as valid by the relevant scientific medical community. Here, there is no standard of qualification the Court need uphold—Guitreau has simply not established the analysis necessary to cross the gap

---

[1] This is even when considering her report, which is separate from her counter affidavit. *See Exhibit 2: Guitreau Report and Exhibits.*

between her opinions and what she has entered into the computer. Guitreau's opinions are wholly dependent on a computer database; there is no way of knowing whether she has been trained on how to use it, or even whether the data she input into the database was accurate. As a result, Guitreau's opinions are conclusory, unsubstantiated by accepted scientific research or methodology and are simply *ipsi dixit.* Simply put, Guitreau's counter affidavit does not satisfy the requirements of Texas law and should therefore be struck and excluded.

**B. Rhonda Guitreau does not possess the knowledge, skill, experience, or other expertise to qualify as an expert under §18.001(f) of the Texas Civil Practice and Remedies Code, Texas Rule of Evidence 702, and Federal Rule of Evidence 702.**

Under Texas law, § 18.001 of the TEX. CIV. PRAC. & REM. CODE allows parties a significant opportunity to save time and minimize costs by providing a means to prove up the reasonableness and necessity of medical expenses. TEX. CIV. PRAC. & REM. CODE §18.001; *Turner v. Peril*, 50 S.W.3d 742 (Tex. App. 2001). Notably, while § 18.001(c)(2)(B) allows affidavits concerning the costs and necessity of service to be provided by non-expert custodians, § 18.001(f) requires a counter affidavit to be made by a person qualified to testify in contravention about matters contained in the initial affidavit. *Id.* Since §18.001 only requires that a counter affidavit be made by an expert, Texas courts have held that § 18.001 places a great burden on counter affidavits in order "to discourage their misuse in a manner that frustrates the intended savings." *Id.* As the Court in *Turner* pointed out, this conclusion is bolstered by the fact that section 18.002 of the Texas Civil Practice & Remedies Code sets out a form for an affidavit for cost and necessity of services but provides no form for a counter affidavit. *Id.* at 747.

In conjunction with §18.001, TEX. R. EVID. 702 requires that the offering party prove their expert is qualified by the knowledge, skill, experience, training, or education on a relevant issue in order to assist the trier of fact to understand the evidence or to determine a fact issue. Tex. R.

Evid. 702. Experts must meet this high burden in order to ensure that they are actually able to assist the trier of fact in understanding the evidence or determining a fact issue. *In re Bohannan*, 388 S.W.3d 296, 298 (Tex. 2012). Additionally, Texas Courts have the duty to make certain experts meet this burden by ensuring that, "those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion. *Id*. at 298. General experience or crediting alone is not enough to qualify a witness as an expert, the offering party must prove that the witness possesses special knowledge on the subjects on which they offer an opinion. *Broders v. Heise*, 924 S.W.2d 148 (Tex. 1996).

Here, Defendant has failed to meet their burden of establishing that Guitreau qualifies as an expert under TEX. R. EVID. 702. First, nothing in Defendant's Counter Affidavit or Guitreau's curriculum vitae indicates she possesses the necessary knowledge, skill, experience, training, or education to qualify as an expert in this matter. Guitreau's qualifications are inadequate to qualify as an expert, as evidenced by her curriculum vitae and the fact that she has already been stricken in several jurisdictions throughout Texas. As more fully discussed below, Plaintiff hereby attaches as Exhibit 3 to this Motion, various Orders in which Texas Courts have struck the counter affidavits and opinions of Guitreau. *See Exhibit 3: Orders Striking*.

According to her curriculum vitae, Guitreau has not practiced medicine since the 1980s, almost thirty (30) years ago. *See Exh. 1-A*. Further, she is only qualified to practice medicine as a respiratory therapy technician. *Id*. While Guitreau *might arguably* be qualified to testify about the reasonable charges of another respiratory therapy technician, the glaring fact that Guitreau **does not** possess a medical degree or license disqualifies her to opine and contravene the section 18.001 affidavits of physicians, anesthesiologist, radiologists, and physical therapists. Simply put, Guitreau possesses no formal education, training or experience in the field of medicine that would

qualify her to render opinions on the reasonableness of the costs of Plaintiff's medical treatment that are the subject of the affidavits served by Plaintiff on Defendant.

Therefore, Guitreau does not have the knowledge, skill, experience, training, or education to qualify as an expert according to TEX. R. EVID. 702.  According to *Broders v. Heise*, general experience in a field is not enough to qualify a witness as an expert; the witness must possess special knowledge on the subjects on which they offer an opinion. *Broders*, 924 S.W.2d 148. However, Guitreau does not even possess general experience in the medical fields relating to the bills she seeks to controvert, let alone special knowledge. As stated above, experts must meet a high burden in order to ensure that they are actually able to assist the trier of fact in understanding the evidence or determining a fact issue.

There is simply no authority that Defendant can rely upon to support the position that a respiratory therapy technician who has not practiced in her field in over thirty (30) years can render opinions regarding the reasonableness of the Plaintiff's medical billing expenses incurred in this case.  Accordingly, Guitreau's cumulative experience and qualifications are insufficient to qualify her as an expert to controvert the billing affidavits served by Plaintiff in this matter.

1. **Rhonda Guitreau is not qualified to opine on the reasonableness of the charges for medical care provided to Plaintiff by Basset Surgery Center, The Back & Neck Institute, and Board Certified Orthopeadic Surgeon Dr. Luis Urrea.[2]**

Pursuant to Texas law, Guitreau is patently unqualified to provide testimony in contravention of Plaintiff's medical costs in the El Paso area. As a rule of thumb, general experience in a specialized field does not qualify a witness as an expert. *Hong,* 209 S.W.3d at 802; *Gen. Motors Corp. v. Burry*, 203 S.W.3d 514, 526 (Tex.App.-Fort Worth, 2006, no pet. h.); *Pack*

---

[2] While Plaintiff recognizes that her claim is presently before the United States District Court for the Western District of Texas, Plaintiff will rely on state court cases which have analyzed and interpreted Section 18.001 of the Texas Civil Practice and Remedies Code.

*v. Crossroads, Inc.*, 53 S.W.3d 492, 506 (Tex.App.-Fort Worth 2001, pet. denied). As the Fort Worth Court of Appeals stated in *Hong v. Bennett,* 209 S.W.3d 795 (Tex. App.—Fort Worth 2006, no pet.):

> ***General experience in a specialized field does not qualify a witness as an expert.*** *General Motors Corp. v. Burry,* 203 S.W.3d 514 (Tex. App.—Fort Worth 2006, no pet.); *Pack v. Crossroads, Inc.,* 53 S.W.3d 492, 506 (Tex. App.—Fort Worth 2001, pet. denied). **"What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education'** <u>***regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.***</u>**"** *Broders v. Heise,* 924 S.W.2d 148, 153-54 (Tex. 1996).

209 S.W.3d at 803. Applying these principles to the medical field, the Texas Supreme Court has stated in *Broders* that:

> [G]iven the increasingly specialized and technical nature of medicine, there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question. Such a rule would ignore the modern realities of medical specialization. **After all, the proponent of the testimony has the burden to show that the expert "possesses special knowledge as** <u>***to the very matter on which he proposes to give an opinion***</u>**."**

924 S.W.2d at 152, quoting 2 RAY, Texas Law of Evidence: Civil and Criminal § 1401 at 32 (Texas Practice 3d ed. 1980) [emphasis added]. Thus, in *Broders,* the Court held that an emergency room physician was not qualified to opine on the cause of a brain injury. *Id.* at 153; *see also Travelers Ins. Co. v. Martin,* 28 S.W.3d 42, 48 (Tex. App.—Texarkana 2000, no pet.) (orthopedic surgeon not qualified to testify regarding the reasonableness and necessity of chiropractic care); *Spivey v. James,* 1 S.W.3d 380, 384 (Tex. App.—Texarkana 1999, pet. denied) (dentist not trained in dental surgery was not qualified to opine on the standard of care during dental surgery); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230 (Tex. App. 2005) (nurse with no experience working in a nursing home not qualified to opine on standard of care).

Texas Courts apply the foregoing medical expert qualification principles in the context of

determining whether a putative "expert" can opine on the reasonableness of medical charges in the context of a counter affidavit submitted under §18.001(f) of the Texas Civil Practice and Remedies Code. *See Broders v. Heise*, 924 SW.2d 148, 152 (Tex. 1996) (holding that a licensed medical doctor is not automatically qualified to testify as an expert on every medical question); *Turner v. Peril*, 50 S.W.3d 742, 747 (Tex. App.–Dallas 2001, pet. denied) *(orthopedic surgeon not qualified to submit a §18.001(f) affidavit challenging the reasonableness and necessity of charges for a hospital, pharmacies, a chiropractor, a diagnostic center, a nurse anesthetist and doctors who were not orthopedic surgeons*) [emphasis added]; *Hong,* 209 S.W.3d at 803-04 (*chiropractor not qualified to submit a §18.001(f) affidavit challenging the reasonableness of bills of a medical doctor, a radiologist or a pharmacist*) [emphasis added].

In the instant case, and like in *Turner* and *Hong*, Guitreau is wholly unqualified to provide testimony to controvert the reasonableness and necessity of medical costs incurred in El Paso County, Texas. While Guitreau *may* have some experience in medical billing, she has *never* worked in the El Paso area. *Exh. 1-A.* Defendant has failed to meet its of burden of showing Guitreau possess any knowledge, skill, experience, training, or education regarding the specific procedures performed on Plaintiff at Bassett Surgery Center and The Back and Neck Institute. According to *Broders v. Heise*, the offering party must prove that their expert "possesses special knowledge as to the very matter on which he proposes to give an opinion," and there is nothing in Guitreau's professional background to show that she has any experience evaluating the reasonableness and necessity of complex medical procedure and facility costs. *Broders,* 924 S.W.2d 148.

Guitreau has outdated and limited experience working as a respiratory theory technician and other than a conclusory statement that Guitreau is "qualified" Defendant's Counter Affidavit

fails to demonstrate how Guitreau is qualified to testify about the necessity or the reasonableness of the charges for the individual medical services and procedures Plaintiff received. *See Turner v. Peril*, 50 S.W.3d 742, 747 (Tex. App.–Dallas 2001, pet. denied). In *Turner v. Peril*, the Court held that an orthopedic surgeon was not qualified to challenge the reasonableness of charges for a hospital*,* pharmacies, a chiropractor, a diagnostic center, a nurse anesthetist and doctors who were not orthopedic surgeons. *Turner v. Peril*, 50 S.W.3d 742, 747 (Tex. App.–Dallas 2001, pet. denied). The Court specifically addressed that the doctor's experience was limited to orthopedic surgery and making a blanket statement that he was qualified by his "education, training and experience" did not show *how* he was qualified to controvert the affidavits of those other professionals. *Id.* Like in *Turner*, the only proof Guitreau offers to establish her qualifications is a conclusory statement that she is qualified based on her "knowledge and experience." *See Exh. 1.*

Other than this general conclusory assertion, Guitreau does not establish what experience she has related to any of plaintiff's medical procedures or costs that are contained in the affidavits. Guitreau spends the majority of her Counter Affidavit illuminating on the Context4 Healthcare database, not establishing her experience related to medical treatments administered to Plaintiff including injections, sedation, x-rays, diagnostic imaging, and general orthopedic treatment. If an orthopedic surgeon is not qualified to provide testimony concerning the reasonableness of medical charges of various healthcare providers without the necessary experience, then certainly, a respiratory therapy technician is not qualified to do so. Accordingly, Defendant's Counter Affidavit is woefully inadequate as it relates to meeting the demanding requirements of counter affidavits offered to controvert billing affidavits served under § 18.001 and Guitreau should be precluded from offering those same opinions at the time of trial.

**2. While this Court is certainly in the position to make its own determination on this issue, it is worth noting that Guitreau's billing counter affidavits have been struck multiple times by Texas Courts, including within El Paso County.**

Guitreau is not a medical doctor, has no medical training, and is just flat out unqualified to execute an 18.001 controverting affidavit contesting the reasonableness of Plaintiff's medical charges. According to Guitreau's resume, she is a "medical billing expert witness." However, one chooses to characterize her occupation, the inescapable truth is that she has *a minimal amount of medical training*. Allowing Guitreau to testify about the reasonable cost of medical treatment is analogous to a secretary or receptionist at a law firm being allowed to testify as to the reasonableness of attorney fees. Just because the secretary or receptionist may enter an attorney's time, review an attorney's bill, and compile the bills to send out to clients, does not make the secretary or receptionist qualified to testify regarding the reasonable and necessary attorney fees.

Consequently, a number of courts have determined that Guitreau's opinions are unreliable and have stricken her counter affidavits that are nearly substantively identical to the counter affidavit she has provided in this case. The following is a list of cases in which Guitreau opinions/affidavits have been struck and are all attached as Exhibit 3 to this Motion:

1. Cause No. 2013-CCL-00029; *Davila v. Garcia,* Cameron County, Texas;

2. Cause No. 236-272393-14; *Ponce v. Monrrial.* in the 236th Judicial District of Tarrant County, Texas;

3. Cause No.2013-54721; *Razo v. Jeffers* in the 152nd District Court of Harris County, Texas;

4. Cause No. 067-266568-13; *Bell v. Buckwalter.* in the 67th Judicial District of Tarrant County, Texas;

5. Cause No. C152347; *Mendeloa v. Wallace* in the County Court at Law No. 2 and Probate Court Brazoria of County, Texas;

6. Cause No. 2013-75447; *Acosta v. Byington* in the 334th District Court of Harris County, Texas;

7.    Cause No. CL-12-1114-G; *Hernandez v. Lewis* in the in the County Court at Law No. 7 of Hidalgo County, Texas;

8.    Cause No. 14-07-07580; *Allen v. Gunn* in the 284th District Court of Montgomery County, Texas;

9.    Cause No. 2015-03882; *Thompson v. Davis* in the 152nd District Court of Harris County, Texas;

10.   Cause No. 2014-73128; *Thomas v. Government Employees Insurance Company* in the 80th District Court of Harris County, Texas;

11.   Cause No. 2015-33429; *Bonilla v. Pruitt* in the 80th District Court of Harris County, Texas;

12.   Cause No. 2014-70313; *Raja v. Bucio* in the 11th District Court of Harris County, Texas;

13.   Cause No. 2014-67304; *Diaz v. Frizzell* in the 55th District Court of Harris County, Texas;

14.   Cause No. 2016DCV3447; *Cereceres v. Almeida* In the 171st Judicial District in El Paso County, Texas;

15.   Cause No. CV43193; *Menning v. GKD Management, LP* in the 62nd Judicial District in Hopkins County, Texas;

16.   Cause No. DC-14-00712; *Yarbrough v. Ruestmann* in the 14th Judicial District in Dallas County, Texas; and

17.   Cause No. E-200242; *Rebolloso v. Labove* in the 172nd Judicial District in Jefferson County, Texas;

Guitreau's counter affidavit filed in this matter is inherently unreliable. Defendant has not met their great burden of proof with respect to the Guitreau Counter Affidavit. Defendant's unreliable counter affidavit should not be allowed to frustrate and negate the intended purpose of §18.001 of the Texas Civil Practice & Remedies Code. Accordingly, this Court should not allow the use of the Defendant's Counter Affidavit and opinions authored by Rhonda Guitreau in this case. Such affidavit and opinions should be struck in their entirety.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff requests that Defendant's Counter Affidavit and the opinions of Rhona Guitreau be struck and that Plaintiff have such other and further relief, either at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

**FLORES, TAWNEY & ACOSTA P.C.**

/s/ *Daisy Chaparro*
**DAISY CHAPARRO**
TX State Bar No.: 24088824
906 N. Mesa, 2nd Floor
El Paso, Texas 79902
Phone: (915) 308-1000
Facsimile: (915) 300-0283
DChaparro@FTAlawfirm.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this **5th** day of **August** 2019 I delivered this document to the following individuals in compliance with the Federal Rules of Civil Procedure:

*Ken Coffman*
Attorney at Law
221 N. Kansas, Suite 503
El Paso, Texas 79901
Phone: (915) 231-1945
Facsimile: (915) 225-0555
ken@kclawfirm.net
*Attorney for Defendant*

/s/ *Daisy Chaparro*
**DAISY CHAPARRO**

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **DAWN CORDERO,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **VS.** | § | **NO. 3:18-CV-00328** |
| **TARGET CORPORATION,** | § | |
| **Defendant** | § | |
| | § | |

**COUNTER-AFFIDAVIT CONCERNING COST**
**OF MEDICAL SERVICES REGARDING DAWN CORDERO**

BEFORE ME, the undersigned authority, on this day personally appeared *Rhonda R. Guitreau*, after being duly sworn, deposed as follows:

My name is *Rhonda R. Guitreau*. I am over the age of 21, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct. Please see my *curriculum vitae* attached hereto and incorporated herein by reference as **Exhibit A**.

I am a medical billing expert consultant with more than 35 years of experience in the healthcare profession. I have developed an expertise in setting, adjusting, and maintaining client fee schedules and anticipated reimbursement rates at usual and customary fees for various geographic locales based on major insurance allowable fee databases. Over the past 35 years, I have developed an expertise in physician and facility billing, medical fee negotiations, and medical bill auditing. I have reviewed, analyzed, and reported on usual and customary medical fees for over 600 cases involving medical, surgical and pharmacy services provided by a diverse medical provider base.

Based upon my knowledge and experience I am qualified to provide an opinion in contravention to the affidavit regarding the cost of medical services provided for claimed

or actual injuries to **DAWN CORDERO**.  I rely upon widely accepted and highly credible medical industry resources and data regarding the usual, customary and reasonable medical fees and costs for counties in Texas such as those provided to this patient.  Such medical industry and market resources are generally accepted in the industry as providing a credible foundation to determine the usual, customary and reasonable medical fees and costs for specific medical procedures and costs in specific geographic areas.

I have reviewed the statements of charges incurred for services provided to **DAWN CORDERO** by **BASSETT SURGERY CENTER and THE BACK AND NECK INSTITUTE** for treatment of alleged injuries. Based upon my knowledge, experience and billing expertise, and after consulting the medical industry and market resources referenced herein below, it is my opinion that not all the charges levied are within the usual, customary, and reasonable variance for the geographical area in which the services were rendered.  A listing of the reduced service charges is attached hereto and incorporated herein by reference as **Exhibit B.**

The billing codes and associated charges for treatment referenced by the Plaintiff's bills were collected and a line by line review of all fees by each provider was analyzed utilizing Context4Healthcare's (C4H) Usual, Customary and Reasonable (UCR) database. It is the standard accepted practice in the medical community to rely on this type of database to determine fair and reasonable fees for services rendered.   C4H's proprietary UCR database consists of a range of benchmark values ranging from the 25th through the 95th percentile for 290 geo-zips throughout the United States. The Usual, Customary and Reasonable benchmark fees are derived by a team of fee experts and mathematicians who analyze hundreds of millions of actual submitted charges collected from claims filed with various electronic data clearinghouses.  The analyzed claims are not discounted for government and/or commercial payer agreements thus reflecting a true fair market value for the provider's charges.    I have reported the charges for services rendered to **DAWN CORDERO** at the 80th percentile level.  The 80th percentile indicates that the charges billed by  **BASSETT SURGERY CENTER and THE BACK AND NECK INSTITUTE** exceed 80%

of all charges submitted by other providers in the same geographic area for the same services. The 80th percentile charge represents a level that third-party payers, state agencies, commercial entities and others in the healthcare industry find to be a fair and reasonable charge when negotiating out of network provider reimbursement. Context[4] Healthcare's UCR methodology is attached to this affidavit as **Exhibit C** and incorporated as if set forth fully herein.

My opinions are directed at the cost of the charges for medical services rendered by each referenced provider and my opinions are not directed at whether such services were medically necessary.

FURTHER affiant sayeth not.

_Rhonda R. Guitreau_
Rhonda R. Guitreau

SWORN TO AND SUBSCRIBED before me on the ___2nd___ day of July 2019.

MARY E. POBLETE
Notary Public, State of Texas
Comm. Expires 07-29-2019
Notary ID 130312874

Notary Public - State of Texas

# RHONDA R. GUITREAU

**Medical Billing Expert Consultant**
**10455 North Central Expressway, Suite 109**
**Dallas, Texas 75231**
**(214) 534-8998**
**rguitreau@mrsreview.com**

## Professional Profile:

➢ 38 plus years in the Healthcare Industry
➢ 15 plus years billing, coding, and collecting medical claims for professional providers
➢ 8 plus years reviewing and analyzing medical bills for fair and reasonable charges

## Expertise & Knowledge Areas:

➢ Hospital Administrative Director – Cardiopulmonary & Neurodiagnostics
➢ Hospital Coordinator, Educator and Assistant Department Head
➢ Home Health Care Respiratory Care and Marketing Director
➢ Branch Manager – Home Health Center
➢ Executive Director – Medical Equipment Service to Major Hospitals
➢ Owner/Founder – Pediatric Medical Facility
➢ Healthcare Consultant – Physical Medicine, Pain management, Anesthesia, Surgery
➢ Owner/President – Medical Billing and Collections Firm
➢ Practice Management Consultant – Clinic & Facility based providers
➢ Legal Medical Billing Reviews – Utilization of Industry Standard UCR databases; Commercial insurance allowables, Medicare & Medicaid fees and State workers' comp plan charges

## Professional Experience:

**December 2010 – Current**          **Medical Billing Expert Witness/Consultant**
                        **Medical Reimbursement Specialists**

Uniquely qualified to review and evaluate physician and facility medical bills to determine usual, customary and reasonable medical fees. Professional review of medical expenses after medical necessity has been determined to report reasonable and fair charges based on credible industry resources, UCR databases and cost comparisons by geographic area. 1000's of medical bills reviewed regarding the costs of medical and surgical services provided to date. Testified by deposition – 15+cases. 500+ controverting affidavits to date.

## Professional Experience:

**December 2007 – Current**

**President-Owner**
**Practice Management Consultant**
**Dallas Medical Billing – Dallas, TX**

Provide professional medical billing, collections and consulting for specialty providers with complex billing and reimbursement issues…Establish, review and implement providers' annual fee schedules utilizing industry standard methodologies such as UCR databases, econometric models, comparative market analyses and acuity factors. Negotiate out of network reimbursement amounts based on current UCR data and commercial insurance allowable fees.

**January 2004 – November 2007**

**Vice-President, Business Development**
**Dallas Medical Billing – Dallas, TX**

**January 1990 – December 2003**

**Owner/Founder**
**Child Health America – Baton Rouge, LA**

Implemented business plan for start-up of pediatric clinic to provide newly formed State of Louisiana Preventive Health Program for low-income children (Kid Med) …Hosted Bobby Jindal, Asst. Secretary for US Dept. of Health and Human Services news conference to announce new program.

**August 1988 – October 1989**

**Executive Director**
**Advanced Medical Concepts –**
**Baton Rouge, LA**

Implemented business plan…Established operational budget…Hired professional staff… Established administrative procedures and reporting… Acquired inventory…Established fees and secured referral base for this new hospital owned durable medical equipment company and infusion pharmacy service.

**June 1986 – April 1988**

**Branch Manager**
**Primedica/AMI Home Health Care Equip**
**Centers**
**Slidell & Hammond, LA**

Planned, coordinated, and implemented opening of new branch office... Responsible for marketing, cost controls, collections and corporate reporting…Recruited, hired and trained new employees…Purchased initial inventory… Established and maintained all fees and charges…. Combined budget of $1 million.

## Professional Experience:

| | |
|---|---|
| **April 1984 – July 1985** | **Respiratory Care/Marketing Director** |
| | **National Home Health Care – Amarillo, TX** |

Supervised 3 staff marketing special services to physicians…Implemented creative strategies to build referrals and client base…Made home visits to infants on apnea monitors subject to SIDS (Sudden Infant Death Syndrome)

| | |
|---|---|
| **July 1982 – January 1984** | **Administrative Director – Humana, Inc.** |
| | **Garland Community Hospital- Garland, TX** |

Supervised 15 technical staff for Respiratory Therapy, Cardiology, Neuro-Diagnostics and Non-Invasive Vascular Lab…Managed budget of $1.5 million…Served on Safety, CPR, Infection Control, Quality Assurance and ICU hospital committees

| | |
|---|---|
| **October 1981 – July 1982** | **Pulmonary Rehabilitation Coordinator** |
| | **Methodist Hospital of Dallas – Dallas, TX** |

Supervised 30 technical personnel, 5-7 students in specialized department…Developed team approach for in-patient and out-patient programs…Instructor for respiratory technology students from El Centro College.

| | |
|---|---|
| **August 1979 - September 1981** | **Assistant Department Head/Coordinator** |
| | **Veterans Administrative Hospital –** |
| | **Houston, TX; Shreveport, LA** |

Supervised exercise physiology lab…Participated in drug research studies…Conducted in-service education…Coordinated pulmonary function laboratory services

| | |
|---|---|
| **September 1977 – August 1979** | **Staff Respiratory Therapist** |
| | **Schumpert Medical Center – Shreveport, LA** |

Worked in Intensive Care Unit, Neonatal Intensive Care Unit, Emergency Room…Participated in Care Flight of critically-Ill neonates.

## Education:

**Bachelor's Degree, December 1979**     **Louisiana State University at Shreveport**
                                         **Focus in Respiratory Therapy; Business**

## Certifications:

Registered Respiratory Therapist – 1981
Certified Respiratory Therapy Technician – 1979
Certified Medical Insurance Specialist - 2004

## Continued Education:

### Professional Journals-

*Healthcare Finance News* – leading news source for developments in Healthcare finance industry
*Modern Healthcare* – leading source of healthcare business & policy issues
*Healthcare Business & Technology* – focuses on trends & issues facing executives in the healthcare industry.

### Professional Seminars/Webinars –

- FairHealth.org and FairHealth Access
- Novitas Solutions - Centers for Medicare and Medicaid Services
- SEAK – The Expert Witness Training Company
- ExpertPages

### Ongoing Review of: -

- Medical Billing industry standards
- Medical Billing cases in litigation - Contract breaches, personal injury, work comp
- Payment settlements re: Subrogation, liens, provider letters of protection
- State and Federal regulations re: Medical bill transparency laws and payment methodologies
- Major Commercial insurance provider policies, allowable fees, correct coding initiatives, plan descriptions/benefits
- New, investigational medical procedures pending insurance reimbursement by major payers
- Provider newsletters from Blue Cross Blue Shield – Texas, Louisiana, Illinois; United Healthcare, Cigna, Aetna, Medicare, Texas Medicaid Health Partnership
- State and Federal guidelines re: expert witnesses and rules of evidence
- Court decisions involving medical billing expert witnesses

|  | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | PROVIDER | DATE OF SERVICE | CPT CODE OR DESCRIPTION | PROVIDER TOTAL CHG | FAIR MARKET VALUE BASED ON 80% CONTEXT*HEALTHCARE UCR DATABASE OR PROVIDER FULL CHARGE | VARIANCE | *CODE |
| 2 | BASSETT SURGERY CENTER - 79925 | | | | | | |
| 3 |  | 7/26/2018 | 27095 | $17,000.00 | $3,925.35 | $13,074.65 | O |
| 4 |  |  | 73525-26 | $1,208.00 | $136.07 | $1,071.93 | O |
| 5 |  |  | 73510-26 | $158.00 | $51.65 | $106.35 | O |
| 6 |  |  | 99152 | $368.00 | $120.03 | $247.97 | O |
| 7 |  |  | J2001 | $21.00 | $10.27 | $10.73 | O |
| 8 |  |  | Q9967 | $179.00 | $20.30 | $158.70 | O |
| 9 |  |  | J1030 | $84.00 | $25.77 | $58.23 | O |
| 10 |  |  | J2400 | $84.00 | $50.46 | $33.54 | O |
| 11 |  |  | A4550 | $16.00 | $16.00 | $0.00 |  |
| 12 |  |  | A4930 | $13.00 | $5.10 | $7.90 | O |
| 13 |  | 12/20/2018 | 64483 | $4,200.00 | $2,934.37 | $1,265.63 | O |
| 14 |  |  | 64450 | $4,200.00 | $1,674.54 | $2,525.46 | O |
| 15 |  |  | 77003-TC | $500.00 | $340.95 | $159.05 | O |
| 16 |  |  | 72100-TC | $500.00 | $103.15 | $396.85 | O |
| 17 |  |  | 99152 | $368.00 | $120.03 | $247.97 | O |
| 18 |  |  | Q9967 | $179.00 | $20.30 | $158.70 | O |
| 19 |  |  | J2001 | $21.00 | $10.27 | $10.73 | O |
| 20 |  |  | J2400 | $84.00 | $50.46 | $33.54 | O |
| 21 |  |  | J1030 | $84.00 | $25.77 | $58.23 | O |
| 22 |  |  | A4550 | $16.00 | $16.00 | $0.00 |  |
| 23 |  |  | A4930 | $13.00 | $5.10 | $7.90 | O |
| 24 |  |  |  |  |  |  |  |
| 25 | TOTAL |  |  | $29,296.00 | $9,661.94 | $19,634.06 | O |
| 26 |  |  |  |  |  |  |  |
| 27 | THE BACK & NECK INSTITUTE - 79925 | | | | | | |
| 28 |  | 9/28/2017 | 99245 | $750.00 | $629.34 | $120.66 | O |
| 29 |  |  | 73502 | $250.00 | $150.91 | $99.09 | O |
| 30 |  | 6/22/2018 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 31 |  | 7/26/2018 | 27095 | $2,500.00 | $933.66 | $1,566.34 | O |
| 32 |  |  | 73525-TC | $500.00 | $282.22 | $217.78 | O |
| 33 |  |  | 73502-TC | $250.00 | $99.26 | $150.74 | O |
| 34 |  | 8/13/2018 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 35 |  | 11/1/2018 | 72148 | $2,250.00 | $2,250.00 | $0.00 |  |
| 36 |  | 11/14/2018 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 37 |  | 12/20/2018 | 64483 | $5,000.00 | $1,918.76 | $3,081.24 | O |
| 38 |  |  | 64450 | $1,000.00 | $497.09 | $502.91 | O |
| 39 |  |  | 72100-26 | $500.00 | $66.26 | $433.74 | O |
| 40 |  | 1/3/2019 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 41 |  | 1/18/2019 | 72146 | $2,250.00 | $2,224.21 | $25.79 | O |
| 42 |  | 2/6/2019 | 99215 | $500.00 | $300.16 | $199.84 | O |

|    | A | B | C | D | E | F | G |
|----|---|---|---|---|---|---|---|
| 1 | PROVIDER | DATE OF SERVICE | CPT CODE OR DESCRIPTION | PROVIDER TOTAL CHG | FAIR MARKET VALUE BASED ON 80% CONTEXT⁴HEALTHCARE UCR DATABASE OR PROVIDER FULL CHARGE | VARIANCE | *CODE |
| 43 | THE BACK & NECK INSTITUTE - 79925 | | | | | | |
| 44 | | | 20610 | $200.00 | $200.00 | $0.00 | |
| 45 | | | J1100 X 4 | $40.00 | $40.00 | $0.00 | |
| 46 | | 3/29/2019 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 47 | | | | | | | |
| 48 | TOTAL | | | $18,490.00 | $11,092.67 | $7,397.33 | O |
| 49 | *O - Provider charges exceed usual, customary and reasonable fees charged by other providers in the same geographic area. | | | | | | |

EXHIBIT C - PG1



# Ususal, Customary & Reasonable

*Healthcare Fee Data*



EXHIBIT C – PG2

## | Industry Challenge

Ensuring that the right service is administered at the right cost is a cornerstone of proper healthcare coverage. However, with one doctor billing a service at $100, and another doctor right next door billing the same service at $800, how is a payer or third-party administrator to know what's usual, customary, and reasonable?



## | Context Solution

Context has been a leader in usual, customary and reasonable fee (UCR) analysis since 1994. Our UCR fee data offerings make certain that insurance companies, employer groups, and other healthcare organizations have the accurate and comprehensive fee information necessary to operate in today's complex healthcare environment.

Context UCR products are constructed using a proven statistical methodology. Billions of provider charges collected semi-annually, with only the most current two years used in the statistical model. Context's proprietary methodology offers you unique advantages.

First, using provider charges means our customers have access to both "allowable" and "co-pay" amounts. Second, charges are not altered through heterogeneous payer adjudication processes that often include faulty policies, errors and fraud / waste / abuse. Third, using 24 month rolling charge data means customers get the most relevant fee information.

UCR fee data is arrayed in precentiles from the 25th through the 95th. It is also divided into geo-zip regions around the country to allow for regional differences in healthcare costs. UCR fee data is updated semi-annually to deliver the most timely and relevant fee data possible.

## | Real-time Cloud Service Available

Context is the only nationally recognized UCR provider accessible through real-time web services. Our real-time option eliminates the need to load databases or track versioning throughout the year.

## | Broadest Fee Coverage

Context UCR offers the broadest fee coverage in the market today. Many customers that move from other products are surprised not only at the coverage of scope and specialty, but the availability of fee data for new codes.





Copyright 2018 Context 4 Healthcare, Inc. This document contains confidential and proprietary information.



EXHIBIT C – PG3

*Context's UCR includes:*

- **Medical**  Professional medical fees from 39 specialties.  It includes hard to fi nd behavioral health fees.

- **Dental**  Professional dental fees.

- **Anesthesia**  Anesthesiologist professional fees including duration and base units for benchmarking.

- **HCPCS**  Non-physician services and miscellaneous items.  It includes hard to find DME fees.

- **Outpatient Facility**  Facility costs for hospital outpatient or ambulatory surgical center services.

- **Inpatient Facility**  Facility costs for inpatient services.  Based on the CMS MEDPAR data it includes DRG-based fees that are "per day" and "per stay".

## | The Payer Community's Trusted Source

Hundreds of payers, TPAs and providers use Context UCR data. Examples include out-of-network claim pricing, cost containment, re-pricing, charge master maintenance, health planning and population health cost forecasting.

## | Free Fee Evaluation

Contact us today for a free fee evaluation.  Send us 10 of your most common procedure codes and three zip codes.  We will pull UCR fees for the 25th, 50th, and 95th percentiles.  We will demo the results and usage of our Fee Viewer Pro application tool.



Talk to an Expert now

http://go.context4.com/contact-us-free-ucr-demo/

Sales@context4.com

800.783.3378

Contact Context4




Copyright 2018 Context 4 Healthcare, Inc.  This document contains confidential and proprietary information.





# Context[4] Healthcare UCR

## <u>Summary</u>

The healthcare industry for decades has had a need for information about prevailing rates in multiple geographic regions, and at multiple percentiles, for all medical procedures. This information was originally challenging for payers and provider groups to acquire. First, this requires the availability of large quantities of actual claim data for all geographical areas in which the entity wishes to do business. Secondly, not all medical procedures may be commonly performed in all areas, which may not allow for a statistically valid prevailing rate to be directly determined from a simplistic reading of the data.

The Context[4] Healthcare (Context) Usual, Customary & Reasonable (UCR) Fee database solves these problems and provides both medical providers and healthcare payers a statistically valid tool to help determine reimbursement and billing rates for medical procedures. For each medical procedure code, fees are available for all geographic regions of the United States at multiple percentiles.

## <u>Standards: Data sources and validation</u>

The key to industry acceptance of Context's UCR has been, and continues to be, the quality of the data that is used as input to the statistical model. According to the Centers for Medicare & Medicaid Services (CMS), the definition of UCR is "The amount paid for a medical service in a geographical area based on what providers in the area usually charge for the same or similar medical service." Under that definition, it's imperative that actual provider charges are used to determine the UCR. Context has invested, and continues to invest, significantly in acquiring large volumes of actual claim charge data submitted by providers in all areas of the country. Over a billion actual submitted claim charges are added semi-annually, representing more than 70% of all claims submitted in the United States. The UCR database is updated semi-annually using the most recent 24 months of data to ensure the most relevant data is always used in each update. ***The raw data which is used has not been altered or filtered in any way by any entity, including payers, from the original claims submitted by the healthcare providers.*** Therefore, Context's UCR is based on actual provider charges.

Context accomplishes the task of data validation by removing invalid provider zip codes, as well as removing invalid procedure codes and other obvious errors in the data. Extreme fee outliers are also removed. This requires separating valid submitted charges from data entry errors. Additional in-depth, proprietary data validation processes occur as part of the Context statistical model.

EXHIBIT C – PG4

## General Methodology

The Context methodology for creating UCR was originally developed by highly skilled, experienced PHd level statisticians. Context employs similar statisticians in the maintenance of the statistical model and to assist in customer support. Nothing is outsourced.

The core of the Context methodology involves dividing the process of determining a UCR fee into two parts. The first part involves determining a relative value. This is meant to represent the value of a specific procedure relative to other procedures. The second part is to calculate a conversion factor. These conversion factors are meant to represent the effects of geography on prices, and are calculated at various percentiles. A UCR fee is then calculated by multiplying a relative value specific to each medical procedure by a conversion factor (or CF) which is specific to a geographical region, and to a specific percentile. ***This methodology has been generally accepted in the industry and used by multiple vendors for decades.***

Geographic areas are at the heart of the concept of UCR. The industry accepted methodology for designating a geographic area for UCR purposes is through a three-digit zip level representing various generally-contiguous zip code areas. Context has developed approximately 290 geographic areas ("GeoZips") for UCR. Multiple factors go into determining the Context GeoZips, including economic similarities, population size, and number of medical practitioners. The GeoZip methodology as designed by Context, is extremely important to the validity of the UCR to achieve statistical balance and guard against any single large medical entity establishing the UCR for the GeoZip.

## General Acceptance:  Context[4] Healthcare's position in the industry as a UCR vendor

Context is a trusted, recognized source of UCR to the healthcare industry, and has been for many years.

Context's Medical UCR was introduced into the marketplace in 1994. The HCPCS, Anesthesia, Dental, and Outpatient Facility UCR products were introduced into the marketplace in 1999. The Inpatient UCR product was introduced into the marketplace in 2015.

Context has over 450 customers using the various UCR products. These customers include approximately 220 provider/hospital entities and approximately 230 payer entities.

## Potential Error Rate

The Context UCR products have been in the marketplace for over twenty years.  Evaluation of customer support requests to answer questions about specific UCR fees due to provider appeals shows that Context receives approximately 65 support requests annually, on average. Context's error rate is extremely low, with only a single error identified in the fee for one code in one geographic area in the past two years.

EXHIBIT C - PG5

## Peer Review/Publication:  Third party evaluation

The Context UCR has been subjected to intensive evaluation by Oxford Outcomes and Avalon Health Economics. The blog posting by Avalon Health Economics is attached. The Oxford Outcomes evaluation concluded, after conducting a thorough review of the Context UCR process, that the Context UCR was "reasonable and consistent with best practices."  The Avalon Health Economics blog compares Context UCR methodology with other private and public data sources and states that "the C4H data sourcing is more likely to provide representative data compared to other common sources of fee data."

EXHIBIT C - PG6

# EXHIBIT 2



rguitreau@mrsreview.com
rguitreau@dallasmedicalbilling.com

July 2, 2019

Ken Coffman – Attorney at Law
221 N. Kansas St.
Suite 503
El Paso, TX 79901-1430

Re:  Dawn Cordero v. Target Corporation
    Cause No. 3:18-CV-00328

Dear Mr. Coffman,

      Upon request, I am providing my expert witness report in the matter of Dawn Cordero v. Target Corporation. The following is my expert opinion regarding the costs of the plaintiff Dawn Cordero's medical bills.     I am not making a determination on whether these services were medically necessary and/or required.  I am solely reporting on the reasonable costs for the provider charges represented to me in the medical bills and/or statement of charges.  Provider charges presented in the bills, statements and sworn affidavits that I reviewed may represent the provider customary fees for given services that apply to all patients without regard to the expected source of payment. These charges are considered the providers' standard charges.  My review compared the providers' standard customary charges to other providers' charges within the same geographic location for the same service rendered.

      My expert opinion is based on the usual, customary and reasonable (UCR) method of deciding the allowable amount for a service when a healthcare provider and payor have not agreed upon a negotiated rate for a service or when there is no fee schedule set

by a statue or rule.  When the healthcare provider does not file a claim with the plaintiff's insurance company or the plaintiff lacks health insurance, a UCR analysis of the medical bills may help the court establish reasonable amounts for the services rendered.  My expert opinion provides a UCR analysis based on highly credible, widely accepted UCR data.

As a medical billing expert and practice management consultant with more than 35 years of experience in the healthcare profession, I provide services to medical providers regarding reimbursement negotiations utilizing the UCR method for determining out-of-network claim payments.  I have expertise in setting, adjusting, and maintaining client fee schedules based on UCR databases and allowable fees implemented by major commercial insurance companies, government entities and state agencies.  I have extensive experience in physician and facility billing and medical bill auditing. To date I have reviewed, analyzed, and reported on usual, customary and reasonable medical fees for over 600 cases involving medical, surgical and pharmacy services. A copy of my current curriculum vitae is included as **Exhibit A**.  To date I have testified by deposition in over 10 cases in the last 4 years.  Attached is **Exhibit A-1**, a list of all cases in which I have given testimony to date. I have not authored any publications to date.

I reviewed the statement of charges incurred for services provided to this patient by Bassett Surgery Center and The Back and Neck Institute.  Based upon my knowledge, experience and billing expertise, and after consulting the medical industry and market resources referenced herein below, it is my opinion that not all the charges levied are within the usual, customary, and reasonable variance for the geographical area in which the services were rendered.  A listing of the reduced service charges is attached as **Exhibit B.**

The billing codes and associated charges for treatment referenced by the Plaintiff's bills were collected and a line by line review of all fees by each provider was analyzed utilizing Context4Healthcare's (C4H) Usual, Customary and Reasonable (UCR) database. It is the standard accepted practice in the medical community to rely on this type of database to determine fair and reasonable fees for services rendered. C4H's proprietary UCR database consists of a range of benchmark values ranging from the 25th through the 95th percentile for 290 geo-zips throughout the United States. The Usual, Customary and Reasonable benchmark fees are derived by a team of fee experts and mathematicians who analyze hundreds of millions of actual submitted charges collected from claims filed through various electronic data clearinghouses. The analyzed claims are not discounted for government and/or commercial payer agreements thus reflecting a true fair market value for the provider's charges. I have reported the charges for services rendered at the 80th percentile level. The 80th percentile indicates that the charges billed exceed 80% of all charges submitted by other providers in the same geographic area for the same services. The 80th percentile charge represents an amount that many commercial insurance companies find to be a fair and reasonable charge when negotiating out of network provider reimbursement. Context⁴ Healthcare's UCR methodology is attached as **Exhibit C**.

Based upon my knowledge, experience and billing expertise as previously stated and included within my curriculum vitae, I am qualified to provide an opinion regarding the cost of medical services provided. I rely upon widely accepted, highly credible medical industry resources and data regarding the usual, customary and reasonable medical fees and costs for counties in Texas such as those provided to this patient. Such data and resources are generally accepted in the industry as providing a credible foundation to determine the usual, customary and reasonable fees for medical procedures in a specific geographic area. Once a reasonable fee has been established for

each medical procedure based on UCR data, a negotiated reimbursement amount for the same medical procedure can be determined.

In conclusion, based on a reasonable degree of certainty, it is my opinion that many of the submitted charges exceed the 80th percentile level UCR for the services rendered to this patient. I have therefore reported what I conclude to be a fair and reasonable charge based on the 80th percentile UCR fee for the submitted charges by each provider of medical services.

I specifically reserve the right to add to, amend or subtract from this report as new evidence comes into discovery regarding medical fees and costs for Ms. Dawn Cordero. Fees for time rendered in this case to date are $390.

I submit this expert witness report with exhibits respectfully,

Rhonda R Guitreau

Medical Billing Expert Witness

Encl: Exhibit

# RHONDA R. GUITREAU

**Medical Billing Expert Consultant**
**10455 North Central Expressway, Suite 109**
**Dallas, Texas 75231**
**(214) 534-8998**
**rguitreau@mrsreview.com**

## Professional Profile:

- 38 plus years in the Healthcare Industry
- 15 plus years billing, coding, and collecting medical claims for professional providers
- 8 plus years reviewing and analyzing medical bills for fair and reasonable charges

## Expertise & Knowledge Areas:

- Hospital Administrative Director – Cardiopulmonary & Neurodiagnostics
- Hospital Coordinator, Educator and Assistant Department Head
- Home Health Care Respiratory Care and Marketing Director
- Branch Manager – Home Health Center
- Executive Director – Medical Equipment Service to Major Hospitals
- Owner/Founder – Pediatric Medical Facility
- Healthcare Consultant – Physical Medicine, Pain management, Anesthesia, Surgery
- Owner/President – Medical Billing and Collections Firm
- Practice Management Consultant – Clinic & Facility based providers
- Legal Medical Billing Reviews – Utilization of Industry Standard UCR databases; Commercial insurance allowables, Medicare & Medicaid fees and State workers' comp plan charges

## Professional Experience:

| December 2010 – Current | Medical Billing Expert Witness/Consultant |
|---|---|
| | Medical Reimbursement Specialists |

Uniquely qualified to review and evaluate physician and facility medical bills to determine usual, customary and reasonable medical fees. Professional review of medical expenses after medical necessity has been determined to report reasonable and fair charges based on credible industry resources, UCR databases and cost comparisons by geographic area. 1000's of medical bills reviewed regarding the costs of medical and surgical services provided to date. Testified by deposition – 15+cases. 500+ controverting affidavits to date.

# Professional Experience:

December 2007 – Current

**President-Owner**
**Practice Management Consultant**
**Dallas Medical Billing – Dallas, TX**

Provide professional medical billing, collections and consulting for specialty providers with complex billing and reimbursement issues…Establish, review and implement providers' annual fee schedules utilizing industry standard methodologies such as UCR databases, econometric models, comparative market analyses and acuity factors. Negotiate out of network reimbursement amounts based on current UCR data and commercial insurance allowable fees.

January 2004 – November 2007

**Vice-President, Business Development**
**Dallas Medical Billing – Dallas, TX**

January 1990 – December 2003

**Owner/Founder**
**Child Health America – Baton Rouge, LA**

Implemented business plan for start-up of pediatric clinic to provide newly formed State of Louisiana Preventive Health Program for low-income children (Kid Med) …Hosted Bobby Jindal, Asst. Secretary for US Dept. of Health and Human Services news conference to announce new program.

August 1988 – October 1989

**Executive Director**
**Advanced Medical Concepts –**
**Baton Rouge, LA**

Implemented business plan…Established operational budget…Hired professional staff… Established administrative procedures and reporting… Acquired inventory…Established fees and secured referral base for this new hospital owned durable medical equipment company and infusion pharmacy service.

June 1986 – April 1988

**Branch Manager**
**Primedica/AMI Home Health Care Equip**
**Centers**
**Slidell & Hammond, LA**

Planned, coordinated, and implemented opening of new branch office... Responsible for marketing, cost controls, collections and corporate reporting…Recruited, hired and trained new employees…Purchased initial inventory… Established and maintained all fees and charges…. Combined budget of $1 million.

## Professional Experience:

| April 1984 – July 1985 | **Respiratory Care/Marketing Director**<br>**National Home Health Care – Amarillo, TX** |

April 1984 – July 1985      **Respiratory Care/Marketing Director**
**National Home Health Care – Amarillo, TX**

Supervised 3 staff marketing special services to physicians…Implemented creative strategies to build referrals and client base…Made home visits to infants on apnea monitors subject to SIDS (Sudden Infant Death Syndrome)

**July 1982 – January 1984**      **Administrative Director – Humana, Inc.**
**Garland Community Hospital- Garland, TX**

Supervised 15 technical staff for Respiratory Therapy, Cardiology, Neuro-Diagnostics and Non-Invasive Vascular Lab…Managed budget of $1.5 million…Served on Safety, CPR, Infection Control, Quality Assurance and ICU hospital committees

**October 1981 – July 1982**      **Pulmonary Rehabilitation Coordinator**
**Methodist Hospital of Dallas – Dallas, TX**

Supervised 30 technical personnel, 5-7 students in specialized department…Developed team approach for in-patient and out-patient programs…Instructor for respiratory technology students from El Centro College.

**August 1979 - September 1981**      **Assistant Department Head/Coordinator**
**Veterans Administrative Hospital –**
**Houston, TX; Shreveport, LA**

Supervised exercise physiology lab…Participated in drug research studies…Conducted in-service education…Coordinated pulmonary function laboratory services

**September 1977 – August 1979**      **Staff Respiratory Therapist**
**Schumpert Medical Center – Shreveport, LA**

Worked in Intensive Care Unit, Neonatal Intensive Care Unit, Emergency Room…Participated in Care Flight of critically-Ill neonates.

## Education:

**Bachelor's Degree, December 1979**　　　　　**Louisiana State University at Shreveport**
　　　　　　　　　　　　　　　　　　　　　　　　　**Focus in Respiratory Therapy; Business**

## Certifications:

Registered Respiratory Therapist – 1981
Certified Respiratory Therapy Technician – 1979
Certified Medical Insurance Specialist - 2004

## Continued Education:

### Professional Journals-

*Healthcare Finance News* – leading news source for developments in Healthcare finance industry
*Modern Healthcare* – leading source of healthcare business & policy issues
*Healthcare Business & Technology* – focuses on trends & issues facing executives in the healthcare industry.

### Professional Seminars/Webinars –

- FairHealth.org and FairHealth Access
- Novitas Solutions - Centers for Medicare and Medicaid Services
- SEAK – The Expert Witness Training Company
- ExpertPages

### Ongoing Review of: -

- Medical Billing industry standards
- Medical Billing cases in litigation - Contract breaches, personal injury, work comp
- Payment settlements re: Subrogation, liens, provider letters of protection
- State and Federal regulations re: Medical bill transparency laws and payment methodologies
- Major Commercial insurance provider policies, allowable fees, correct coding initiatives, plan descriptions/benefits
- New, investigational medical procedures pending insurance reimbursement by major payers
- Provider newsletters from Blue Cross Blue Shield – Texas, Louisiana, Illinois; United Healthcare, Cigna, Aetna, Medicare, Texas Medicaid Health Partnership
- State and Federal guidelines re: expert witnesses and rules of evidence
- Court decisions involving medical billing expert witnesses

| DATE | CAUSE NO. | COUNTY | STATE | COURT | TESTIFIED BY |
|---|---|---|---|---|---|
| 12/15/2014 | 2013-CCL-00029 | CAMERON | TX | COUNTY COURT AT LAW | DEPOSITION |
| 5/13/2015 | 2014-24076 | HARRIS | TX | 234TH JUDICIAL DISTRICT | DEPOSITION |
| 6/16/2015 | 2014-55905 | HARRIS | TX | 151ST JUDICIAL DISTRICT | DEPOSITION |
| 7/16/2015 | 2015-03882 | HARRIS | TX | 152ND JUDICIAL COURT | DEPOSITION |
| 10/20/2015 | 2015-3620 | HARRIS | TX | 189TH JUDICIAL DISTRICT | DEPOSITION |
| 10/26/2015 | 2014C117308 | BEXAR | TX | 407TH JUDICIAL DISTRICT | DEPOSITION |
| 4/5/2016 | 2015-10390 | HARRIS | TX | 152ND JUDICIAL COURT | DEPOSITION |
| 6/1/2016 | 2014-41214 | HARRIS | TX | 189TH JUDICIAL DISTRICT | DEPOSITION |
| 8/17/2016 | 001-04197-2015 | COLLIN | TX | COUNTY COURT AT LAW | DEPOSITION |
| 6/27/2017 | DC-16-09120 | DALLAS | TX | 160TH JUDICIAL DISTRICT | DEPOSITION |
| 2/7/2018 | 2015CI15640 | BEXAR | TX | 150TH JUDICIAL DISTRICT | DEPOSITION |
| 2/20/2018 | 16CV33766 | SHELBY | TX | 123RD/273RD DISTRICT | DEPOSITION |
| 3/19/2018 | 98587-86 | KAUFMAN | TX | 86TH JUDICIAL DISTRICT | DEPOSITION |
| 11/20/2018 | 2017-00251-2 | TARRANT | TX | COUNTY COURT AT LAW #2 | DEPOSITION |
| 3/27/2019 | 153-297363-18 | TARRANT | TX | 153RD JUDICIAL DISTRICT | DEPOSITION |
| **PUBLICATIONS** | | | | | |
| **AUTHORED:** | **NONE TO DATE** | | | | |

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | PROVIDER | DATE OF SERVICE | CPT CODE OR DESCRIPTION | PROVIDER TOTAL CHG | FAIR MARKET VALUE BASED ON 80% CONTEXT4HEALTHCARE UCR DATABASE OR PROVIDER FULL CHARGE | VARIANCE | *CODE |
| 2 | BASSETT SURGERY CENTER - 79925 | | | | | | |
| 3 | | 7/26/2018 | 27095 | $17,000.00 | $3,925.35 | $13,074.65 | O |
| 4 | | | 73525-26 | $1,208.00 | $136.07 | $1,071.93 | O |
| 5 | | | 73510-26 | $158.00 | $51.65 | $106.35 | O |
| 6 | | | 99152 | $368.00 | $120.03 | $247.97 | O |
| 7 | | | J2001 | $21.00 | $10.27 | $10.73 | O |
| 8 | | | Q9967 | $179.00 | $20.30 | $158.70 | O |
| 9 | | | J1030 | $84.00 | $25.77 | $58.23 | O |
| 10 | | | J2400 | $84.00 | $50.46 | $33.54 | O |
| 11 | | | A4550 | $16.00 | $16.00 | $0.00 | |
| 12 | | | A4930 | $13.00 | $5.10 | $7.90 | O |
| 13 | | 12/20/2018 | 64483 | $4,200.00 | $2,934.37 | $1,265.63 | O |
| 14 | | | 64450 | $4,200.00 | $1,674.54 | $2,525.46 | O |
| 15 | | | 77003-TC | $500.00 | $340.95 | $159.05 | O |
| 16 | | | 72100-TC | $500.00 | $103.15 | $396.85 | O |
| 17 | | | 99152 | $368.00 | $120.03 | $247.97 | O |
| 18 | | | Q9967 | $179.00 | $20.30 | $158.70 | O |
| 19 | | | J2001 | $21.00 | $10.27 | $10.73 | O |
| 20 | | | J2400 | $84.00 | $50.46 | $33.54 | O |
| 21 | | | J1030 | $84.00 | $25.77 | $58.23 | O |
| 22 | | | A4550 | $16.00 | $16.00 | $0.00 | |
| 23 | | | A4930 | $13.00 | $5.10 | $7.90 | O |
| 24 | | | | | | | |
| 25 | TOTAL | | | $29,296.00 | $9,661.94 | $19,634.06 | O |
| 26 | | | | | | | |
| 27 | THE BACK & NECK INSTITUTE - 79925 | | | | | | |
| 28 | | 9/28/2017 | 99245 | $750.00 | $629.34 | $120.66 | O |
| 29 | | | 73502 | $250.00 | $150.91 | $99.09 | O |
| 30 | | 6/22/2018 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 31 | | 7/26/2018 | 27095 | $2,500.00 | $933.66 | $1,566.34 | O |
| 32 | | | 73525-TC | $500.00 | $282.22 | $217.78 | O |
| 33 | | | 73502-TC | $250.00 | $99.26 | $150.74 | O |
| 34 | | 8/13/2018 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 35 | | 11/1/2018 | 72148 | $2,250.00 | $2,250.00 | $0.00 | |
| 36 | | 11/14/2018 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 37 | | 12/20/2018 | 64483 | $5,000.00 | $1,918.76 | $3,081.24 | O |
| 38 | | | 64450 | $1,000.00 | $497.09 | $502.91 | O |
| 39 | | | 72100-26 | $500.00 | $66.26 | $433.74 | O |
| 40 | | 1/3/2019 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 41 | | 1/18/2019 | 72146 | $2,250.00 | $2,224.21 | $25.79 | O |
| 42 | | 2/6/2019 | 99215 | $500.00 | $300.16 | $199.84 | O |

|   | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | PROVIDER | DATE OF SERVICE | CPT CODE OR DESCRIPTION | PROVIDER TOTAL CHG | FAIR MARKET VALUE BASED ON 80% CONTEXT⁴HEALTHCARE UCR DATABASE OR PROVIDER FULL CHARGE | VARIANCE | *CODE |
| 43 | THE BACK & NECK INSTITUTE - 79925 | | | | | | |
| 44 | | | 20610 | $200.00 | $200.00 | $0.00 | |
| 45 | | | J1100 X 4 | $40.00 | $40.00 | $0.00 | |
| 46 | | 3/29/2019 | 99215 | $500.00 | $300.16 | $199.84 | O |
| 47 | | | | | | | |
| 48 | TOTAL | | | $18,490.00 | $11,092.67 | $7,397.33 | O |
| 49 | *O - Provider charges exceed usual, customary and reasonable fees charged by other providers in the same geographic area. | | | | | | |

EXHIBIT C – PG1





# Ususal, Customary & Reasonable

*Healthcare Fee Data*

EXHIBIT C – PG2

## | Industry Challenge

Ensuring that the right service is administered at the right cost is a cornerstone of proper healthcare coverage.  However, with one doctor billing a service at $100, and another doctor right next door billing the same service at $800, how is a payer or third-party administrator to know what's usual, customary, and reasonable?



## | Context Solution

Context has been a leader in usual, customary and reasonable fee (UCR) analysis since 1994.  Our UCR fee data offerings make certain that insurance companies, employer groups, and other healthcare organizations have the accurate and comprehensive fee information necessary to operate in today's complex healthcare environment.

Context UCR products are constructed using a proven statistical methodology.  Billions of provider charges collected semi-annually, with only the most current two years used in the statistical model.  Context's proprietary methodology offers you unique advantages.

First, using provider charges means our customers have access to both "allowable" and  "co-pay" amounts.  Second, charges are not altered through heterogeneous payer adjudication processes that often include faulty policies, errors and fraud / waste / abuse.  Third, using 24 month rolling charge data means customers get the most relevant fee information.

UCR fee data is arrayed in precentiles from the 25th through the 95th.  It is also divided into geo-zip regions around the country to allow for regional differences in healthcare costs.  UCR fee data is updated semi-annually to deliver the most timely and relevant fee data possible.

## | Real-time Cloud Service Available

Context is the only nationally recognized UCR provider accessible through real-time web services.  Our real-time option eliminates the need to load databases or track versioning throughout the year.

## | Broadest Fee Coverage

Context UCR offers the broadest fee coverage in the market today.  Many customers that move from other products are surprised not only at the coverage of scope and specialty, but the availability of fee data for new codes.





WWW.CONTEXT4.COM

Copyright 2018 Context 4 Healthcare, Inc.  This document contains confidential and proprietary information.



EXHIBIT C – PG3

*Context's UCR includes:*

- **Medical** Professional medical fees from 39 specialties. It includes hard to find behavioral health fees.

- **Dental** Professional dental fees.

- **Anesthesia** Anesthesiologist professional fees including duration and base units for benchmarking.

- **HCPCS** Non-physician services and miscellaneous items. It includes hard to find DME fees.

- **Outpatient Facility** Facility costs for hospital outpatient or ambulatory surgical center services.

- **Inpatient Facility** Facility costs for inpatient services. Based on the CMS MEDPAR data it includes DRG-based fees that are "per day" and "per stay".

## | The Payer Community's Trusted Source

Hundreds of payers, TPAs and providers use Context UCR data. Examples include out-of-network claim pricing, cost containment, re-pricing, charge master maintenance, health planning and population health cost forecasting.

## | Free Fee Evaluation

Contact us today for a free fee evaluation. Send us 10 of your most common procedure codes and three zip codes. We will pull UCR fees for the 25th, 50th, and 95th percentiles. We will demo the results and usage of our Fee Viewer Pro application tool.



Talk to an Expert now
http://go.context4.com/contact-us-free-ucr-demo/

Sales@context4.com

800.783.3378

Contact
Context4




Copyright 2018 Context 4 Healthcare, Inc. This document contains confidential and proprietary information.





# Context[4] Healthcare UCR

## Summary

The healthcare industry for decades has had a need for information about prevailing rates in multiple geographic regions, and at multiple percentiles, for all medical procedures. This information was originally challenging for payers and provider groups to acquire. First, this requires the availability of large quantities of actual claim data for all geographical areas in which the entity wishes to do business. Secondly, not all medical procedures may be commonly performed in all areas, which may not allow for a statistically valid prevailing rate to be directly determined from a simplistic reading of the data.

The Context[4] Healthcare (Context) Usual, Customary & Reasonable (UCR) Fee database solves these problems and provides both medical providers and healthcare payers a statistically valid tool to help determine reimbursement and billing rates for medical procedures. For each medical procedure code, fees are available for all geographic regions of the United States at multiple percentiles.

## Standards:  Data sources and validation

The key to industry acceptance of Context's UCR has been, and continues to be, the quality of the data that is used as input to the statistical model. According to the Centers for Medicare & Medicaid Services (CMS), the definition of UCR is "The amount paid for a medical service in a geographical area based on what providers in the area usually charge for the same or similar medical service." Under that definition, it's imperative that actual provider charges are used to determine the UCR. Context has invested, and continues to invest, significantly in acquiring large volumes of actual claim charge data submitted by providers in all areas of the country. Over a billion actual submitted claim charges are added semi-annually, representing more than 70% of all claims submitted in the United States. The UCR database is updated semi-annually using the most recent 24 months of data to ensure the most relevant data is always used in each update. ***The raw data which is used has not been altered or filtered in any way by any entity, including payers, from the original claims submitted by the healthcare providers.***  Therefore, Context's UCR is based on actual provider charges.

Context accomplishes the task of data validation by removing invalid provider zip codes, as well as removing invalid procedure codes and other obvious errors in the data. Extreme fee outliers are also removed. This requires separating valid submitted charges from data entry errors. Additional in-depth, proprietary data validation processes occur as part of the Context statistical model.

EXHIBIT C - PG4

## General Methodology

The Context methodology for creating UCR was originally developed by highly skilled, experienced PHd level statisticians. Context employs similar statisticians in the maintenance of the statistical model and to assist in customer support. Nothing is outsourced.

The core of the Context methodology involves dividing the process of determining a UCR fee into two parts. The first part involves determining a relative value. This is meant to represent the value of a specific procedure relative to other procedures. The second part is to calculate a conversion factor. These conversion factors are meant to represent the effects of geography on prices, and are calculated at various percentiles. A UCR fee is then calculated by multiplying a relative value specific to each medical procedure by a conversion factor (or CF) which is specific to a geographical region, and to a specific percentile. ***This methodology has been generally accepted in the industry and used by multiple vendors for decades.***

Geographic areas are at the heart of the concept of UCR. The industry accepted methodology for designating a geographic area for UCR purposes is through a three-digit zip level representing various generally-contiguous zip code areas. Context has developed approximately 290 geographic areas ("GeoZips") for UCR. Multiple factors go into determining the Context GeoZips, including economic similarities, population size, and number of medical practitioners. The GeoZip methodology as designed by Context, is extremely important to the validity of the UCR to achieve statistical balance and guard against any single large medical entity establishing the UCR for the GeoZip.

## General Acceptance:  Context[4] Healthcare's position in the industry as a UCR vendor

Context is a trusted, recognized source of UCR to the healthcare industry, and has been for many years.

Context's Medical UCR was introduced into the marketplace in 1994. The HCPCS, Anesthesia, Dental, and Outpatient Facility UCR products were introduced into the marketplace in 1999. The Inpatient UCR product was introduced into the marketplace in 2015.

Context has over 450 customers using the various UCR products. These customers include approximately 220 provider/hospital entities and approximately 230 payer entities.

## Potential Error Rate

The Context UCR products have been in the marketplace for over twenty years.  Evaluation of customer support requests to answer questions about specific UCR fees due to provider appeals shows that Context receives approximately 65 support requests annually, on average. Context's error rate is extremely low, with only a single error identified in the fee for one code in one geographic area in the past two years.

EXHIBIT C – PG5

## **Peer Review/Publication:  Third party evaluation**

The Context UCR has been subjected to intensive evaluation by Oxford Outcomes and Avalon Health Economics. The blog posting by Avalon Health Economics is attached. The Oxford Outcomes evaluation concluded, after conducting a thorough review of the Context UCR process, that the Context UCR was "reasonable and consistent with best practices."  The Avalon Health Economics blog compares Context UCR methodology with other private and public data sources and states that "the C4H data sourcing is more likely to provide representative data compared to other common sources of fee data."

EXHIBIT C - PG6

# EXHIBIT 3



FILED FOR RECORD
AT_____O'CLOCK____M

NOV 20 2014

JOE G. RIVERA
IN THE COUNTY CAMERON COUNTY CLERK
By_____Deputy

NO. 2013-CCL-00029

| ENRIQUE DAVILA | § | IN THE COUNTY COURT AT LAW |
| Plaintiff, | § | |
| | § | |
| V. | § | NO. 1 |
| | § | |
| | § | |
| ENRIQUE GARCIA | § | |
| Defendant. | § | CAMERON COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S COUNTER-AFFIDAVITS

After considering Plaintiff's Motion to Strike Defendant's Counter-Affidavit, the Court finds that Rhonda Guitreau's opinion testimony is without proper basis or foundation and that she is not qualified to give testimony concerning Plaintiff's injuries, treatment or cost of treatment, and that such unfounded opinion testimony is not needed to assist the jury in this case, and therefore the Court hereby orders that Plaintiff's Motion to Strike Defendant's Counter-Affidavit is **GRANTED**, and the testimony of Rhonda Guitreau's is hereby stricken and excluded for all purposes in this matter.

Signed this _____ day NOV 18 2014 , 2014.

_____
JUDGE PRESIDING

EXHIBIT E

236-272393-14

Cause No. 236-272393-14

FILED
TARRANT COUNTY
3/2/2015 8:15:56 PM
THOMAS A. WILDER
DISTRICT CLERK

BERTHA PONCE
Plaintiff,

vs.

ABIGAIL MONRRIAL
Defendant.

§
§
§
§
§
§
§
§
§

IN THE DISTRICT COURT

TARRANT COUNTY, TEXAS

236TH JUDICIAL DISTRICT

ORDER

On this the 31 day of March 2015, came to be heard Plaintiff's Motion to Strike the Counter-Affidavit and Bar Testimony of Retained Expert Dr. R. Edward Roybal and Plaintiff's Motion to Strike the Counter-Affidavit and Bar Testimony of Retained Expert Rhonda Guitreau. The parties appeared by their respective attorneys.

The Court, after reading the motions and hearing the arguments of counsel, is of the opinion that the motion should be granted under the terms and conditions ordered by the Court below.

IT IS ORDERED that this Motion to Strike Defendant's Counter-Affidavit of Dr. R. Edward Roybal is ~~GRANTED~~ Denied and that upon trial of this cause, Defendant Abigail Monrrial is NOT precluded from introducing into evidence the testimony of Dr. R. Edward Roybal, whether by live testimony, deposition, affidavit, or otherwise.

IT IS ORDERED that this Motion to Strike Defendant's Counter-Affidavit of Rhonda Guitreau is GRANTED and that upon trial of this cause, Defendant Abigail Monrrial is precluded from introducing into evidence the testimony of Rhonda Guitreau, whether by live testimony, deposition, affidavit, or otherwise.

238-272393-14

SIGNED this is the 3 (day of _March_ 2015.

_[signature]_

JUDGE PRESIDING

P-1
, STPLX

4/23/2015 4:38:30 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 5013369
By: WILLIAMS, KATINA L
Filed: 4/23/2015 4:38:30 PM

CAUSE NO. 2013-54721

OLIVIA RAZO; AND          §        IN THE DISTRICT COURT OF
MARIA REYES               §
      Plaintiffs,         §
                          §
vs.                       §
                          §        HARRIS COUNTY, TEXAS
ASHLANA JEFFERS           §
      Defendant           §
                          §        152ND JUDICIAL DISTRICT

ORDER STRIKING COUNTER AFFIDAVITS OF RHONDA GUITREAU

BE IT REMEMBERED on the below signed date came on to be considered Plaintiff's Objection and Motion to Strike Defendant's Counter-Affidavits of Rhonda Guitreau. After considering the Motion and the Affidavits, and listening to the arguments of counsel and reviewing the evidence, the Court finds and orders as follows:

Rhonda Guitreau has not established being qualified to render testimony as to the reasonableness or unreasonableness of medical charges in Harris County, Texas.

It is ORDERED, that the Counter Affidavits of Rhonda Guitreau filed by Defendant in this cause be and are hereby struck.

MAY 0 8 2015
SIGNED this _____ day of _____ 2015.

_____
JUDGE PRESIDING

Page 1 of 1

067-266568-13

Cause No. 067-266568-13

| JAMES EDWARD BELL,<br>Plaintiffs, | § | IN THE DISTRICT COURT |
| --- | --- | --- |
| | § | |
| | § | |
| vs. | § | |
| | § | TARRANT COUNTY, TEXAS |
| | § | |
| TED BUCKWALTER,<br>Defendant, | § | |
| | § | 67th JUDICIAL DISTRICT |

## ORDER

On this the 20 day of May 2015, came to be heard Plaintiff's Unopposed Motion to Strike the Counter-Affidavit and Bar Testimony of Retained Expert Rhonda Guitreau. The parties appeared by their respective attorneys.

The Court, after reading the unopposed motion is of the opinion that the motion should be granted under the terms and conditions ordered by the Court below.

The Court finds that Rhonda Guitreau has not established that she is qualified to render testimony as to the reasonableness or unreasonableness of medical charges in Tarrant County, Texas.

IT IS ORDERED that Plaintiff's Motion to Strike the Counter-Affidavit and Bar Testimony of Retained Expert Rhonda Guitreau is GRANTED and that upon trial of this cause, Defendant Ted Buckwalter is precluded from introducing into evidence the testimony of Ms. Rhonda Guitreau, whether by live testimony, deposition, affidavit, or otherwise.

SIGNED this is the 20 day of May 2015.

Donald J Cosby

JUDGE PRESIDING

E-MAILED
5|20|15
MAILED

Court's Minutes
Transaction # 116
NNK

NO  CI52347

| APRIL MENDEOLA, IND, AND A/N/F | * | IN THE COUNTY COURT AT LAW |
| MICHAEL MORENO AND | * | |
| AUSTIN MORENO, | * | |
| PLAINTIFF | * | #2 & PROBATE COURT |
| | * | |
| VS | * | |
| | * | |
| MICHAEL WALLACE | * | |
| DEFEDANT | * | BRAZORIA COUJNTY, TEXAS |

## ORDER GRANITNG PLAINTIFF'S MOTION TO STRIKE

On June 8, 2015, came on to be heard in the above entitled and numbered cause, Plaintiff's Motion to Strike Counter-Affidavits, and the court, after hearing the argument of counsel, is of the opinion that the same should be granted as follows

1. The affidavit of Rhonda Guitreau is stricken as it has not been established that she is qualified to render testimony as to the reasonableness or unreasonableness of medical charges in Brazoria County, Texas,
2. The request to bar testimony as an expert is denied at this time, as no designation of Rhonda Guitreau has been made that she is a testifying expert, and,
3. No action was requested as to sanctions and none taken

Signed this 9th day of June, 2015

Judge presiding

CAUSE NO. 2013-75447

| | | |
|---|---|---|
| MARGARITA ACOSTA | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| JULIA BYINGTON | § | 334TH JUDICIAL DISTRICT |

## ORDER STRIKING THE COUNTER-AFFIDAVIT OF RHONDA GUITREAU

BE IT REMEMBERED on the below signed date came on to be considered Plaintiff's Objection and Motion to Strike Defendant's Counter-Affidavit of Rhonda Guitreau. After considering the Motion, the Affidavit, the arguments of counsel and reviewing the evidence, the Court finds and **ORDERS** as follows:

Rhonda Guitreau is not qualified to render testimony as to the reasonableness or unreasonableness of medical charges in Harris County, Texas. It is further:

**ORDERED** that the Counter Affidavit of Rhonda Guitreau filed by Defendant in this cause is struck and cannot be presented in the trial of this matter.

SIGNED this _25th_ day of _June_ 2015.

_____
JUDGE PRESIDING

**FILED**
Chris Daniel
District Clerk

JUN 25 2015

Time:_____
Harris County, Texas

By_____
Deputy

CAUSE NO. CL-12-1114-G

MINERVA HERNANDEZ                    §        IN THE COUNTY COURT
                                     §
                                     §
VS.                                  §        AT LAW # 7
                                     §
                                     §
ELIZABETH MARIE LEWIS AND            §
ROBERTO VALDEZ                       §        HIDALGO COUNTY, TEXAS

AT 3:00 FILED O'CLOCK P M
JUN 27 2013
AUTHO BEAU... ..CTIO... CLERK
BY NO. ... OF HIDALGO CO
DEPU...

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE
## DEFENDANT'S COUNTER AFFIDAVITS OF RHONDA GUITREAU

On the _____ day of _____, 2013, the Court considered Plaintiff's Motion

To Strike Defendant's Counter Affidavit of Rhonda Guitreau, and after hearing live testimony and

considering the motion, the Court finds that owning and/or working at a medical billing company

does not give an individual the knowledge, skills, experience, training, education or other expertise,

to testify in contravention of the matters contained in the billing affidavits.   Therefore, the Court

*GRANTS* Plaintiff's Motion and *STRIKES* Defendant's Counter Affidavits of Rhonda Guitreau.

SIGNED the 27 day of _____June_____, 2013.

_____
PRESIDING JUDGE

Received and E-Filed for Record
6/22/2015 12:27:53 PM
Barbara Gladden Adamick
District Clerk
Montgomery County, Texas

CAUSE NO. 14-07-07580

| | | |
|---|---|---|
| JULIE ALLEN, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | MONTGOMERY COUNTY, TEXAS |
| JANICE   GUNN   independent | § | |
| administrator for the Estate of NANCY | § | |
| WARD, | § | |
| | § | |
| *Defendant.* | § | 284th JUDICIAL DISTRICT |

## ORDER STRIKING COUNTER-AFFIDAVITS OF RHONDA GUITREAU

BE IT REMEMBERED on the below signed date came on to be considered Plaintiff's Motion to Strike Counter-Affidavits of Rhonda Guitreau. After considering the motions, and after hearing the arguments of counsel, this Court finds that the motion is meritorious and should be GRANTED. It is therefore:

~~ORDERED, ADJUDGED, & DECREED that Rhonda Guitreau is unqualified~~ to render testimony as to the reasonableness ~~or unreasonableness~~ of medical *Cw* ~~charges in Harris County and Fort Bend County, Texas. It is further:~~

Signed: 7/10/2015 10:48 AM

ORDERED, ADJUDGED, & DECREED that, upon trial of this cause, Defendant is precluded from introducing into evidence the testimony of Rhonda Guitreau, ~~whether by live testimony, deposition,~~ affidavit~~ or otherwise.~~ previously filed in this cause.

Signed: 7/10/2015 10:48 AM

*Cw*

SIGNED this ___10___ day of ___July___ 2015.

Signed: 7/10/2015 10:48 AM

*Cara Wood*

JUDGE PRESIDING

P3
STPLX

8/4/2015 5:36:49 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 6357356
By: WILLIAMS, KATINA L
Filed: 8/4/2015 5:36:49 PM

Cause No. 2015-03882

| CRYSTAL THOMPSON | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | 152nd JUDICIAL DISTRICT |
| | § | |
| DORIAN DAVIS | § | HARRIS COUNTY, TEXAS |

## ORDER

On the date below came on to be heard Plaintiff's Motion to Strike the Counter-affidavit and Testimony of Rhonda Guitreau. After considering the Plaintiff's Motion, Defendant's response, the arguments of counsel and reviewing the evidence, the Court finds and orders as follows:

Rhonda Guitreau has not established being qualified to render testimony as to the reasonableness or unreasonableness of medical charges in Harris County, Texas.

It is ORDERED that the counter-affidavit of Rhonda Guitreau filed by Defendant in this cause is struck. It is ordered that the testimony of Rhonda Guitreau rendered in this cause is struck.

SIGNED this AUG 14 2015 _____, 2015.

_____
JUDGE ROBERT SCHAFFER

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

① 
STPLX

**CAUSE NO. 2014-73128**

| | | |
|---|---|---|
| NICOLE THOMAS; | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| GOVERNMENT EMPLOYEES | § | |
| INSURANCE COMPANY; | § | |
| | § | |
| Defendant. | § | 80ᵗʰ JUDICIAL DISTRICT |

<u>ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE</u>

CAME ON before the Court PLAINTIFF'S OBJECTION TO AND MOTION TO STRIKE DEFENDANT'S COUNTER-AFFIDAVITS OF RHONDA GUITREAU.

The Court, having considered the objection and motion, is of the opinion that same is well taken and should be GRANTED.

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that DEFENDANT'S COUNTER-AFFIDAVITS OF RHONDA GUITREAU be stricken from the record.

SIGNED this ___ day of __August__, 2015.

_____
JUDGE PRESIDING

**FILED**
Chris Daniel
District Clerk
AUG 28 2015
Time:_____
Harris County, Texas
By_____
Deputy

ORDER

10/27/2015 11:38:47 AM
Chris Daniel - District Clerk
Harris County
Envelope No: 7555368
By: CASARES, ALEXANDRO
Filed: 10/27/2015 11:38:47 AM

NO. 2015-33429

| | | |
|---|---|---|
| DUNIA BONILLA | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| ALLSTATE INDEMNITY COMPANY | § | |
| AND LATINA PRUITT | § | 80TH  JUDICIAL  DISTRICT |

## ORDER ON PLAINTIFF'S OBJECTION AND MOTION TO STRIKE DEFENDANT'S COUNTER-AFFIDAVIT OF RHONDA GUITREAU CONCERNING THE REASONABLE COST OF PLAINTIFF'S MEDICAL SERVICES

BE IT REMEMBERED that on this day came to be heard Plaintiff's Objection and Motion to Strike Defendant's Counter-Affidavit of Rhonda Guitreau, and the Court after considering the Motion, evidence and arguments of counsel is of the opinion that Plaintiff's Objection and Motion to Strike Defendant's Counter-Affidavit of Rhonda Guitreau should in all things be GRANTED. Accordingly, it is therefore:

ORDERED, ADJUDGED and DECREED that the counter-affidavit of Rhonda Guitreau filed by Defendant in the above-entitled and numbered cause be and is hereby struck. Additionally, all of Rhonda Guitreau's proposed opinions are excluded from the trial of this case.

Signed this _____ day of _December_, 2015.

_____
JUDGE PRESIDING

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

1/13/2016 10:27:01 AM
Chris Daniel - District Clerk
Harris County
Envelope No: 8589252
By: TOLMAN, TAMMY E
Filed: 1/13/2016 10:27:01 AM

CAUSE NO. 2014-70313

| | | |
|---|---|---|
| KHOZEMA RAJA | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| JACQUELINE BUCIO | § | |
| *Defendant.* | § | 11th JUDICIAL DISTRICT |

## ORDER ON PLAINTIFF'S MOTION TO STRIKE COUNTER-AFFIDAVIT

On this day came on to be considered Plaintiff's Motion To Strike Defendant's Counter-Affidavit Of Marc Chapman, and the Court, having considered the Motion, affidavits, evidence and arguments of counsel, finds that Plaintiff's Motion is meritorious.

It is therefore,

ORDERED that Plaintiff's Motion To Strike Defendant's Counter-Affidavit Of Marc Chapman is GRANTED and the counter-affidavit from Marc Chapman is hereby stricken.

Signed this _____ day of _____FEB - 8 2016_____, 2016.

_____
JUDGE PRESIDING

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

1/22/2016 4:29:21 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 8754402
By: TOLMAN, TAMMY E
Filed: 1/22/2016 4:29:21 PM

**CAUSE NO. 2014-67304**

| | | |
|---|---|---|
| **MIGUEL DIAZ,** | § | IN DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| **JILL FRIZZELL,** | § | |
| *Defendant.* | § | 55th JUDICIAL DISTRICT |

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S BILLING RECORDS COUNTER-AFFIDAVIT

On this day the Court considered Plaintiff's Motion to Strike Defendant's Billing

Records Counter-Affidavit, Defendant's response, and the arguments of counsel, if any,

and finds that the Motion should in all things be GRANTED. It is therefore,

ORDERED that Defendant's Billing Records Counter-Affidavit is stricken from the

record.

SIGNED on this the ___ day of _____, 2016.

_____
JUDGE PRESIDING

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Approved as to Form:

*[signature]*
Alfred A. Pandolfi, SBN 15443700
Attorney for Plaintiffs

*[signature]*
Benton Williams, SBN 2704720 4
Attorney for Defendants

Wesley Johnson
Lead Counsel

Unofficial Copy Office of Chris Daniel District Clerk

## IN THE 171ST JUDICIAL DISTRICT COURT
## EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| OLGA CERECERES, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | CAUSE NO.: 2016DCV3447 |
| ENRIQUE ALMEIDA AND STATE | § | |
| FARM MUTUAL AUTOMOBILE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| *Defendants.* | § | |

### ORDER STRIKING THE COUNTER-AFFIDAVIT OF RHONDA GUITREAU

On this 3rd day of May, 2017, this Court, having considered Plaintiff's Amended Motion to Strike Defendant Enrique Almeida's Counteraffidavit Concerning the Cost and Necessity of Plaintiff's Medical Services in the above-referenced action, and all arguments of counsel, is of the opinion that the Motion shall be **GRANTED**.

It is therefore ORDERED, ADJUDGED and DECREED that Plaintiff's Amended Motion to Strike Defendant Enrique Almeida's Counteraffidavit Concerning the Cost and Necessity of Plaintiff's Medical Services is hereby **GRANTED** and that the counter-affidavit of Rhonda Guitreau, dated February 8, 2017, is **STRUCK**.

IT IS SO ORDERED on this **15** day of **MAY**, 2017.

_____
**The Honorable Judge of Said Court**

**Approved as to form only:**

*Andrew J. Cavazos*
_____
Andrew J. Cavazos
*Attorney for Plaintiff*

*Garrett Yancey*
_____
Garrett J. Yancey
*Attorney for Defendant, Enrique Almeida*

Filed 7/16/2018 1:00 PM
Cheryl Fulcher
District Clerk
Hopkins County, Texas

Tyra Kenemore

## CAUSE NO. CV43193

| | | |
|---|---|---|
| **LYNDA MENNING, INDIVIDUALLY** | § | **IN THE DISTRICT COURT OF** |
| **AND AS REPRESENTATIVE** | § | |
| **OF THE ESTATE OF DICKIE LYNN** | § | |
| **DUCKWORTH, JR., DECEASED** | § | |
| **LYNDA DUCKWORTH, AS NEXT** | § | |
| **FRIEND OF ANISEA DUCKWORTH AND** | § | |
| **JACOB DUCKWORTH, MINOR** | § | |
| **CHILDREN; KAREN DUCKWORTH;** | § | |
| **MAGGIE DUCKWORTH; GLENDA** | § | |
| **PHILLIPS; AND DICKIE DUCKWORTH** | § | |
| **SR.** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **HOPKINS COUNTY, TEXAS** |
| | § | |
| **GKD MANAGEMENT, LP** | § | |
| **D/B/A A&G COMMERCIAL TRUCKING,** | § | |
| **INC.; CMH MANUFACTURING, INC.,** | § | |
| **JEREMY BUCK MARTIN, LONE** | § | |
| **STAR WHEEL COMPONENTS, INC.,** | § | |
| **ACE TIRE & AXLE, INC. AND** | § | |
| **HENGSHUI BEIFANG BRAKE PAD** | § | |
| **CO., LTD.** | § | |
| **Defendants.** | § | **62ND JUDICIAL DISTRICT** |

## CAUSE NO. CV43193

| | | |
|---|---|---|
| **VIRGIL RAY DILLARD,** | § | **IN THE DISTRICT COURT OF** |
| **INDIVIDUALLY** | § | |
| **Intervenor,** | § | |
| | § | |
| **v.** | § | **HOPKINS C000OUNTY, TEXAS** |
| | § | |
| **GKD MANAGEMENT, LP** | § | |
| **D/B/A A&G COMMERCIAL TRUCKING;** | § | |
| **CMH MANUFACTURING, INC., AND** | § | |
| **JEREMY BUCK MARTIN** | § | |
| **Defendants.** | § | **62ND JUDICIAL DISTRICT** |

_____
## ORDER GRANTING INTERVENOR'S MOTION TO STRIKE THE COUNTER-AFFIDAVIT OF RHONDA GUITREAU
_____


On the 16TH day of July 2018, came to be considered Intervenor, Virgil Dillard's Motion to Strike the Counter-Affidavit of Rhonda Guitreau. (the "Motion"). The Court, after having considered the Motion, any response filed by Defendants, any reply or sur-reply that was filed and arguments of counsel, is of the OPINION that such Motion should be, in all things, GRANTED.

It is therefore **ORDERED, AJUDGED AND DECREED** that the Motion is granted on the ground that Rhonda Guitreau is not qualified to provide evidence or testimony of the reasonableness or necessity of the medical bills served by Intervenor on Defendant in this matter. Accordingly, the counter-affidavit of Rhonda Guitreau is hereby stricken from the record for all purposes  in this case.

Signed on this the ____ day of _____, 2018.
                 16          July


_____
Honorable Will Biard

CAUSE NO. DC-14-00712

| GWENDOLYN YARBROUGH | § | IN DISTRICT COURT |
|---|---|---|
| | § | |
| VS. | § | 14th JUDICIAL DISTRICT |
| | § | |
| | § | |
| SHARON WODEK RUESTMANN | § | DALLAS COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO STRIKE CONTROVERTING AFFIDAVITS

On this the 18th day of December 2014, came *Plaintiff's Motion for Partial Summary Judgment, Strike Controverting Affidavits, and Bar Expert Testimony.*

Counsel for Plaintiff and counsel for Defendant appeared. After due consideration of al pleadings and argument of counsel, this Court is of the opinion that Plaintiff's Motion should be GRANTED as follows:

IT HAS BEEN ORDERED, ADJUDGED, AND DECREED, Plaintiff's request for partial summary judgment is granted as follows:

- Plaintiff has incurred medical expense of $32,342.91;

- The medical expenses incurred by Plaintiff were reasonable; and

- The medical expenses incurred by Plaintiff were necessary.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, the Controverting Affidavits of Roger Clifford, DC. and Rhonda Guitreau are stricken.

It is noted that Defense counsel represented that she would not be calling any retained experts to testify in the trial of this matter. Therefore, this Court did not hear and made no ruling on Plaintiff's request that Defendant's retained experts not be allowed to testify.

ANY RELIEF REQUESTED BUT NOT GRANTED HEREIN IS DENIED.

17 Dec 2014

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND TO STRIKE CONTROVERTING AFIDAVITS - 1**

FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
9/21/2018 10:41 AM
JAMIE SMITH
DISTRICT CLERK
E-200242

CAUSE NO. E-200242

| DEBBIE REBOLLOSO, INDIVIDUALLY AND AS NEXT FRIEND OF LAILA FLORES, A MINOR AND PATRICIA LEWIS | § § § § § | IN THE DISTRICT COURT OF |
|---|---|---|
| VS. | § § | JEFFERSON COUNTY, TEXAS |
| SHEILA LABOVE | § | 172ND JUDICIAL DISTRICT |

## ORDER STRIKING COUNTER AFFIDAVITS AND TESTIMONY OF RHONDA GUITREAU

On this day, came on to be heard Plaintiffs' Motion to Strike Controverting Affidavit of Rhonda Guitreau. The Court, having read the Motion and any Response thereto and after having listened to argument of counsel is of the opinion that said Motion is Meritorious and should be GRANTED. It is therefore

ORDERED, ADJUDGED and DECREED that Rhonda Guitreau has not been established as being qualified to render testimony as to the reasonableness or necessity of medical charges or treatment in Jefferson County, Texas;

It is further ORDERED, ADJUDGED and DECREED that the Counter Affidavits of Rhonda Guitreau filed by Defendant in this cause be and hereby struck and Defendant is precluded from introducing into evidence the testimony of Rhonda Guitreau which is the subject of the Counter Affidavits.

SIGNED this the 21st day of September, 2018.

Donald J. Floyd
JUDGE PRESIDING