IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DAWN CORDERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-00328-DCG |
| | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TARGET CORPORATION'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO STRIKE COUNTER AFFIDAVIT
<u>AND EXCLUDE OPINIONS OF RHONDA GUITREAU</u>**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendant TARGET CORPORATION files this its Response in Opposition to Plaintiff's

Motion to Strike Counter Affidavit and Exclude Opinions of Rhonda Guitreau (ECF No. 35) and in

support thereof would respectfully show the Court as follows:

**FACTUAL BACKGROUND**

1.      On January 29, 2019, Plaintiff filed an unopposed motion to determine the

applicability of Tex. Rev. Civ. Prac. & Rem. Code § 18.001 (ECF No. 4) and a supporting

memorandum (ECF No. 5).  On February 12, 2019, the Court issued a Memorandum Order granting

in part and denying in part Plaintiff's motion (ECF No. 8).

2.      On June 5, 2019, Plaintiff served Defendant with medical and business records

affidavits from a number of health care providers, including business records affidavits from The

Back & Neck Institute and Bassett Surgery Center.  Attached hereto as Exhibit 1 and incorporated

herein by reference is the Affidavit of Luz Ibarra, the records custodian for Bassett Surgery Center,

whose records show that no payment had been received for the billing entity's services and that

identify "Flores Tawney & Acosta" as the primary insurance on Plaintiff's account.  Attached hereto as Exhibit 2 and incorporated herein by reference is the Affidavit of Lucia Orena, the records custodian for The Back & Neck Institute, whose records show that no payment had been received for the billing entity's services and that identify "Flores Tawney & Acosta" under the heading "Insurance Plan Name or Program Name."

3.       On July 5, 2019, Defendant served Plaintiff with a Counter-Affidavit Concerning Cost of Medical Services Regarding Dawn Cordero that was executed by Rhonda R. Guitreau of Medical Reimbursement Specialists.  Defendant contemporaneously served Plaintiff with Ms. Guitreau's report dated July 2, 2019, her curriculum vitae, her itemized medical billing review, and Context[4] Healthcare's literature describing its database for determining usual, customary and reasonable healthcare fee data.  Ms. Guitreau's opinions are limited to the amount of reasonable fees for the services provided by two of the Plaintiff's nine healthcare providers:  The Back & Neck Institute and Bassett Surgery Center.  Ms. Guitreau does not opine on the necessity of the services provided.

4.       Ms. Guitreau's report and resume establish that she has over fifteen years' experience in medical billing and coding, that she has over eight years' experience in analyzing medical bills for the fairness and reasonableness of charges, and that she has reviewed, analyzed and reported on medical fees in over 600 cases.  Attached hereto and incorporated herein by reference as Exhibit 3 is the Counter-Affidavit Concerning Cost of Medial Services Regarding Dawn Cordero of Rhonda R. Guitreau together with the exhibits referenced in it.  Attached hereto and incorporated herein by reference as Exhibit 4 is Rhonda R. Guitreau's report dated July 2, 2019 together with the exhibits referenced in it.

## SUMMARY OF ARGUMENT

5.      Plaintiff has moved to strike both the expert opinion testimony and counter-affidavit of Ms. Guitreau based upon claims that Ms. Guitreau's counter-affidavit does not provide reasonable notice of the basis for her opinions and that Ms. Guitreau is not qualified to testify about the reasonableness of medical charges.  Tex. Civ. Prac. & Rem. Code § 18.001(f).  Defendant submits that Plaintiff's contentions are not supported by current Texas case law as enunciated by the Texas Supreme Court in *Gunn v. McCoy*, 554 S.W.3d 645 (Tex. 2018).  Ms. Guitreau's itemized review of the charges based upon the Context[4] Healthcare database along with her explanation of the methodology used to determine their reasonableness meets the "reasonable notice" standard of § 18.001(f).  Ms. Guitreau's curriculum vitae and report reflect that she is qualified to render opinions on the reasonableness of medical charges based upon her knowledge, skill, experience and training.

## DISCUSSION OF AUTHORITIES

6.      Plaintiff's Motion to Strike actually raises two separate matters for the Court's consideration.  First, Plaintiff moves to strike the counter-affidavit of Ms. Guitreau because it does not meet the standard set forth in § 18.001 of the Texas Civil Practice & Remedies Code.  That contention presents an issue of state law interpretation.  Second, Plaintiff moves to exclude the expert opinion testimony of Ms. Guitreau based upon her qualifications as an expert.  According to the Court's Memorandum Order (ECF No. 8), this issue would be governed by the Federal Rules of Evidence.  Since both § 18.001(f) and Fed. R. Ev. 702 require that a witness be qualified as an expert by knowledge, skill, experience, training, or education, this may be a distinction without a difference.

**A.     Ms. Guitreau's Counter-Affidavit meets the statutory requirements of Tex. Civ. Prac. & Rem. Code § 18.001(f).**

7.     The Texas Civil Practice & Remedies Code sets forth the two part standard for a counter-affidavit contesting the reasonableness of a health care provider's charges:

> The counteraffidavit must give reasonable notice of the basis on which the party serving it intends at trial to controvert the claim reflected by the initial affidavit and must be taken before a person authorized to administer oaths.  The counteraffidavit must be made by a person who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit.

Tex. Civ. Prac. & Rem. Code § 18.001(f).  This Court's Memorandum Order (ECF No. 8) expressly requires compliance with § 18.001(f).

8.     Plaintiff's argument contesting the sufficiency of Ms. Guitreau's counter-affidavit relies primarily upon the opinion of the Dallas Court of Appeals in *Turner v. Peril*, 50 S.W.3d 742 (Tex. App. – Dallas 2001, pet. denied).  Plaintiff does not cite to the Texas Supreme Court's opinion in *Gunn v. McCoy*, 554 S.W.3d 645, 671-4 (Tex. 2018), which contains a lengthy re-examination of the realities of modern medical billing practices and how those realities now inform affidavit practice under § 18.001.  In *Gunn*, the defendant objected to § 18.001 affidavits from agents for plaintiff's health insurance carriers who had paid plaintiff's medical expenses because they were not affidavits from the providers or their records custodians.  The Texas Supreme Court rejected this interpretation of the statute with the following explanation:

> Health care costs today are complex, and the price of a particular provider's services may depend on many factors, including geography, experience, location, government payment methods, and desire to make a profit.  Hospitals have developed a two-tier pricing system: (1) the "list price," which serves as a starting point for negotiations, similar to the sticker price one might find when purchasing a vehicle; and (2) the "actual price," which is what private insurers, Medicaid and Medicare, and other groups actually pay after negotiations.

*Id.* at 673 (citation omitted).  The Supreme Court then went on to explain the basis for determining the reasonableness of charges with the following observations:

> We have previously noted that agreements between willing providers and willing insurers can yield reasonable rates.  Insurance companies, which insure consumers across the nation, regularly negotiate with providers to agree upon the actual prices.  Moreover, insurance companies keep records and databases of both the list prices and the actual prices of specific treatments and procedures, though they may not pass this information to consumers.  . . . Thus, with national and regional bases on which to compare prices actually paid, insurance agents are generally well-suited to determine the reasonableness of charges.

*Id.* (citations omitted).  Ultimately, the Texas Supreme Court concluded that "the plain language of section 18.001 does not limit the proper affiants to medical providers and medical providers' records custodians, and the reality of our health care system does not mandate such a limitation in order to establish the reasonableness and necessity of expenses."  *Id*. at 674.

9.    While the *Gunn* decision concerned the sufficiency of affidavits of reasonableness and necessity filed under § 18.001(c), it has recently been interpreted by the Tyler Court of Appeals to impact the sufficiency of counter-affidavits filed under § 18.001(f).  *In re Brown*, No. 12-18-00295-CV, 2019 Tex. App. LEXIS 1666; 2019 WL 1032458 (Tex. App. – Tyler March 5, 2019, orig. proceeding).  In *Brown*, the defendants had filed a § 18.001(f) counter-affidavit by Jana Schieber, R.N. challenging the reasonableness of medical charges, and plaintiff's counsel had moved to strike the counter-affidavit for the same reasons that Plaintiff herein asserts as to Ms. Guitreau.  After acknowledging the holding in *Turner v. Peril*, the Tyler Court of Appeals wrote:

> However, the Texas Supreme Court recently clarified the qualifications necessary for Chapter 18 affiants.  In **Gunn v. McCoy**, it held that insurance subrogation agents are qualified to use their databases to create affidavits regarding the reasonableness and necessity of a plaintiff's medical expenses. 554 S.W.3d 645, 674-75 (Tex. 2018).

*Id.*  It is noteworthy that the *Brown* opinion recognized that *Gunn v. McCoy* refined and clarified the

-5-

law to reflect the realities of medical billing practices in modern times and that these realities impact not only § 18.001(c) affidavits but also counter-affidavits under § 18.001(f).  The *Brown* decision, which is designated for publication, held that the trial court had abused its discretion in striking the counter-affidavit of Schieber and conditionally granted defendants' petition for writ of mandamus.

10.     The *Brown* decision noted that Schieber's affidavit included an itemized review of all the charges she reviewed and that showed the amount allowed for each item billed.  The Court held that this information was sufficient to give reasonable notice of the claims being controverted and why.  Exhibit B to the counter-affidavit of Ms. Guitreau contains an itemized listing of each coded procedure and provides a specific fair market value for each procedure to establish the reasonable charge for each procedure.  In addition, Ms. Guitreau has provided explanatory materials from Context[4] Healthcare that explain how its databases are developed and maintained.  Surely, Ms. Guitreau's sworn affidavit, her itemized Medical Billing Summary, and her explanatory documentation from Context[4] Healthcare meet the reasonable notice standard of § 18.001(f).

11.     The *Brown* decision also evaluated a challenge to the Schieber counter-affidavit based upon her qualifications.  The evidence was that Schieber had worked in claim management and claim analysis for insurance companies since 1999, that she had maintained and worked with databases for medical costs, and that she was familiar with medical coding and billing practices.  The *Brown* opinion noted that the Supreme Court in *Gunn* had emphasized the value of insurance company databases of both list and actual prices of specific procedures as a means of determining the reasonableness of medical expenses.  The Brown court then concluded that plaintiff's "argument that Schieber is unqualified and her opinion unreliable because she is not a practicing nurse and relied upon databases is without merit."  *Id*.

-6-

12.     The evidence in the instant case shows that Ms. Guitreau has much the same qualifications as Schieber.   Ms. Guitreau's curriculum vitae shows that she has a medical background, having been a registered respiratory therapist since 1981 and having worked in hospital environments in a number of capacities.   She has been a certified medical insurance specialist since 2004.   She has also worked as a consultant to medical providers helping them to establish fees schedules and reimbursement amounts.   She also has over fifteen years' experience in medical billing and coding; she has over eight years' experience in analyzing medical bills for the fairness and reasonableness of charges.   She explains that the determinations of reasonableness made in this case are based upon the same type of database that is used in the medical community to determine fair and reasonable fees for services provided.   Based upon her experience and training as reflected in the documentation she has submitted, Ms. Guitreau is qualified by knowledge, skill, experience and training to render opinions about the reasonableness of the medical charges at issue in this case.

13.     In support of her motion to strike, Plaintiff has submitted orders from thirteen different state trial judges in a total of fifteen cases in which Ms. Guitreau's counter-affidavits have been struck.[1]   Plaintiff has provided no context for these orders, and we do not know what the issues were or how they were presented in those cases.   It is clear that all of those orders reflect decisions made prior to *In re Brown*, discussed above.   Only two of those orders were made after *Gunn v. McCoy* was decided on June 15, 2018.   One was signed on July 16, 2018 (ECF No. 35, p. 71), and the most recent was signed on September 21, 2018 (ECF No. 35, p. 73).   It would seem highly unlikely that these judges had the benefit of the *Gunn v. McCoy* analysis, particularly considering

---

[1]Plaintiff actually submitted a total of seventeen orders.   However, one of the orders pertains to a counter-affidavit of Marc Chapman without any reference to Ms. Guitreau (ECF No. 35, p. 66), and another order does not identify the affiant at all (ECF No. 35, p. 67).

that the motion for rehearing in *Gunn v. McCoy* was not denied until September 28, 2018.  In contrast to those outdated and isolated orders, Ms. Guitreau has been retained as an expert on medical fees in over 600 cases.  Accordingly, Defendant respectfully submits that these orders be given no consideration by this Court.

**B.      Ms. Guitreau's knowledge, skill, experience and training qualify her to render opinions about the reasonableness of medical charges using the methodology described in her report.**

14.      An expert witness must possess knowledge, skill, experience, training, or education that qualifies her to render an opinion based upon that knowledge that will help the trier of fact understand the evidence or determine a fact in issue.  Fed. R. Ev. 702.  Plaintiff's challenge to Ms. Guitreau's qualifications seems to rely upon the mis-guided notion that her experience as a respiratory therapist is the basis for her expertise on the reasonableness of medical charges.  That is simply not the case.  Ms. Guitreau's knowledge, skill, experience and training are summarized in paragraph 12 above and more particularly set forth in Exhibits 3 and 4.  By virtue of her generalized medical knowledge and experience with medical coding and billing procedures and work with establishing reimbursement rates through the use of insurance databases, Ms. Guitreau has exactly the type of experience that the Texas Supreme Court found compelling in *Gunn v. McCoy*.  In fact, the Supreme Court noted in Gunn that "it is not uncommon or surprising that a given medical provider may have no basis for knowing what is a 'reasonable' fee for a specific service."  554 S.W.3d at 673.

15.      In addition to having specialized knowledge, an expert witness must base her opinions on sufficient facts and data that are applied via a methodology that is reliable and principled.  Fed. R. Ev. 702.  Here it is apparent that Ms. Guitreau's opinions as to the determination of reasonable

charges for the services provided are based upon sufficient and reliable data applying a methodology that is broadly accepted.  Her report and accompanying documentation explain that the Context[4] Healthcare's proprietary database consists of a range of benchmark values for 290 geo-zips throughout the United States that allow for regional differences in healthcare costs.  Fee data is updated semi-annually and uses only the most recent two year pricing data to remain current.  Context[4] Healthcare's database is used by both payers (insurance companies) and health care providers.  Using such a sophisticated and objective database to arrive at reasonable charges is, again, exactly what the Texas Supreme Court envisioned in *Gunn v. McCoy*.

16.     Plaintiff argues that Ms. Guitreau is unqualified to testify about reasonable medical costs in the El Paso area.  However, this argument overlooks the fact that the Context[4] Healthcare's database allows for regional differences in health care costs, a factor that Ms. Guitreau expressly references in her counter-affidavit and report.  It also runs contrary to the Supreme Court's observation in Gunn: "Although the list price of health care varies widely across different regions of the country, the actual price paid is relatively static."  554 S.W.3d at 673.

17.     In sum, Plaintiff's argument is not supported by any legal authority or scientific evidence finding that the Context[4] Healthcare database or Ms. Guitreau's methodology of determining reasonable price for medical services is unreliable or otherwise tainted.  Rather, Plaintiff would have the Court limit evidence of what constitutes "reasonable" costs for medical services to ones in which the ultimate price to be paid is determined by an arrangement between the health care providers in question and the Plaintiff's law firm.  Such an arrangement by a Plaintiff without health insurance and without having personally paid for any part of these charges must be subject to challenge by comparison of the list price that Plaintiff is allegedly being charged and the market-

based price for the same procedures that health care providers are actually being paid.  Ms. Guitreau's research accomplishes that goal in a manner consistent with the applicable legal and evidentiary standards.

WHEREFORE, PREMISES CONSIDERED, Defendant TARGET CORPORATION prays that Plaintiff's Motion To Strike Counter Affidavit and Exclude Opinions of Rhonda Guitreau be set for hearing, and that upon due consideration of the evidence and authorities, Plaintiffs' Motion To Strike Counter Affidavit and Exclude Opinions of Rhonda Guitreau be denied and that Defendant have such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

/s/ *Ken Coffman*
KEN COFFMAN
221 N. Kansas Street, Suite 503
El Paso, Texas  79901-1430
(915) 231-1945 (office)
(915) 225-0555 (fax)
ken@kclawfirm.net
State Bar No. 04497320
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12TH day of August, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Daisy Chaparro
Flores, Tawney & Acosta P.C.
906 N. Mesa, 2ND Floor
El Paso, Texas 79902
DChaparro@ftalawfirm.com

/s/ *Ken Coffman*
KEN COFFMAN

-11-